**Terrence W. BROOKMAN and Phyllis Brookman, Plaintiffs-Appellants,**

v.

**GENERAL SAFETY AND SECURITY, INC. and Mitchell K. Tillman, Defendants-Respondents.**

**No. 40781.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 15, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1980.

---

Frank J. Kaveney and Paul Beach, Clayton, for plaintiffs-appellants.

Ben Ely and Brent W. Baldwin, St. Louis, for defendants-respondents.

STEWART, Judge.

Plaintiff Terrence Brookman filed an action for personal injuries arising out of a collision between the motorcycle he was driving and the van of defendant General Safety and Security, Inc. that was being driven by its employee Mitchell Tillman. Plaintiff Phyllis Brookman, the wife of Terrence Brookman, sought damages for loss of consortium. Plaintiffs have appealed from the judgment entered upon an adverse jury verdict. We reverse and remand.

The issues raised are concerned solely with the admission and exclusion of evidence and therefore an extensive statement of the facts is unnecessary.

Defendant Tillman was driving his employer's right hand drive van north on Hanley Road after coming off of Highway 40. He was intending to make a left turn off of Hanley Road after going over the viaduct which is built over Highway 40. Hanley Road is four lanes wide with additional lanes on either side of the road used as entrance ramps to Hanley Road and exit ramps to Highway 40. Hanley Road is divided by a concrete median. Plaintiff Terrence Brookman was traveling north and to the rear of defendant's van. As he was passing to the left of the van the left side of the van and the right side of the motorcycle collided causing serious injury to Mr. Brookman. It was defendant's theory, believed by the jury, that plaintiff Terrence Brookman was driving at a high rate of speed in the east lane of the regularly traveled portion of the road. The van was in the west lane for northbound traffic near the concrete median. Mr. Brookman put on his brakes as he approached the van and started to fishtail. He then turned to his left "and shot between the left side of the van and the median."

Plaintiffs' evidence was that Mr. Brookman was traveling north at a moderate rate of speed in the western lane of traffic behind the van. The van moved into the west lane with its left turn blinkers on and it then moved to the right into the east lane for northbound traffic. At that time Mr. Brookman sounded his horn and started to pass the van. As he was in the act of passing, the van veered back into the west lane of traffic. Mr. Brookman applied the brakes on the motorcycle and swerved to his left toward the median and the left side of the van near the door collided with the right side of the motorcycle.

Plaintiffs first contend that the court erred in admitting into evidence testimony

of Patrolman Gentry, a member of the Richmond Heights Police Department, that plaintiffs' witness Nancy Shaw told him Mr. Brookman was speeding. They contend that the officer relied upon the police report prepared by another and there was no foundation for its use as a business record, a memorandum to refresh his memory or as a memorandum of a past recollection recorded.

The background for plaintiffs' claim of error has its genesis in the testimony of their witness Nancy Shaw. Ms. Shaw testified that she was going north on Hanley Road and was to the rear of the van and the motorcycle. The motorcycle was going about 30 mph as it passed over the viaduct over Highway 40 and that it had reduced its speed to 15 mph at the time of impact. She denied telling Officer Gentry that Mr. Brookman was speeding.

Officer Gentry was called by defendants primarily for the purpose of impeaching the testimony of Ms. Shaw with respect to the speed of the motorcycle with a statement that he said Ms. Shaw made to him at the scene. The testimony of which plaintiffs complain is as follows:

"Q Now looking at your report so that we get this accurately, would you please tell the jury what Nancy Shaw said to you about how the accident happened?

A Nancy Shaw stated to me that the motorcycle was in the left-hand lane and he was speeding; and the blue Van was in the right-hand lane making a turn to go left. And he had signalled and the motorcycle didn't see the signal, and ran into the left side of the Van when he turned."

In earlier testimony Officer Gentry was referred to the police report by defendant's attorney and the following occurred:

"Q Okay. Approximately how far North of Highway 40 according to the report?

MR. KAVENEY: Your Honor, I will object to any testimony from the report unless it is shown that this officer in fact wrote the report.

Q (By Mr. Ely) Well, did you assist in the preparation of this?

A Yes, sir, I did.

Q Okay; could you tell us—

MR. KAVENEY: Your Honor, I will have to renew my objection; improper foundation for him to use that report.

THE COURT: Step over here, gentlemen.

(Whereupon counsel approached the bench and the following occurred out of hearing of the jury.)

MR. ELY: He told me previously that he assisted in the preparation of this. What we can do, if we want to delay things, I can get in officers Duncan and Whitney if you want them to testify, if that is necessary. I don't think it is. He's assisted in the preparation of this; statement of witness Shaw was made directly to him.

MR. KAVENEY: I will, Your Honor, renew my objection there has been improper foundation for him to refer to the report, and let the Judge make his ruling.

THE COURT: Objection is overruled.

.    .    .    .    .

Q All right. Now did you speak to Nancy Shaw about the accident?

A Yes, sir, I did.

Q Did she make a statement to you about how the accident happened?

A Yes, sir.

Q Did you record that statement at the scene?

A Yes, sir, I did.

Q And on what type, or how did you record it, or what type of paper, or whatever?

A I would have to—the actual—

MR. KAVENEY: Your Honor, I object unless he can specifically recall.

THE COURT: He is trying to recall, sir. Overruled.

A We carry notepads, or usually index cards to write down information on; probably something of that type.

Q (By Mr. Ely) Is that transferred to a typewritten report when you go back to the station?

A  I would verbally give my statement to the reporting officer, who would in turn incorporate it in his report.

Q  All right.  Now with respect to the statement that was made at the scene by Nancy Shaw, was that statement made to you?

A  Yes, sir, it was.

Q  And as I understand your testimony, you do have some independent recollection of this particular accident out there that day;  is that correct?

A  Yes, sir."

Upon cross-examination Officer Gentry testified:

"Q  Now you yourself did not write this typewritten report, did you, sir?

A  No, I didn't.

Q  Mr. Ely asked if you had any independent recollection aside from that police report of the accident out there that day, and you say you did;  and I assume that is correct.

A  That is correct.

Q  Do you have any independent recollection aside from that police report, which was not typed by you, as to the statement Nancy Shaw gave at the scene that day?

A  Without referring to the police report, I presumably couldn't have remembered.

Q  So today you are relying on a report that was written by somebody else.  Officer Duncan prepared the report at the station?

A  That is correct."

In discussing the statement of Ms. Shaw, Officer Gentry was asked, "[s]o that your memory has to rely upon the report;  is that correct?"  He answered, "[t]hat is correct."

■  We must first consider defendants' contention that plaintiffs failed to make a timely and specific objection to the evidence and as a consequence have preserved nothing for our review.  It is incum-bent upon a party to make a timely objection and to make the basis of that objection reasonably apparent to the court.  *State ex rel. State Highway Commission v. Offutt*, 488 S.W.2d 656, 660 (Mo.1972);  *Dent v. Monarch Life Ins.*, 231 Mo.App. 283, 98 S.W.2d 123, 125 (1936).  The excerpts from the transcript make it readily apparent that plaintiffs objected to any testimony by Officer Gentry that was dependent upon the contents of the police report because it had not been qualified by a showing that he had prepared the report and that he was not using it to refresh his recollection.  The colloquy between counsel and the court and the comments of the court throughout the testimony of Officer Gentry indicate that the court was fully aware of the basis for plaintiffs' objections.[1]  As was said in *State ex rel. State Highway Commission v. Offutt* at page 660 "[o]ur appellate courts have not, in recent years, been quite so technical as they formerly were on this subject."

Plaintiffs objected promptly when Officer Gentry was directed to use the police report as the basis for his testimony.  There was a colloquy between counsel and the court after which plaintiffs renewed their objection.  These objections were overruled as was a subsequent objection.  Timely and sufficient objection was made to the use of the police report without a proper foundation being laid.  It was unnecessary to make repeated objections to similar evidence.  *Chester v. Shockley*, 304 S.W.2d 831, 835 (Mo.1957).  See also *State ex rel. State Highway Commission v. Offutt, supra*.  We are of the opinion that the court was cognizant of the basis of plaintiffs' objection and that the issue is preserved for our review.

■  It is apparent from Officer Gentry's testimony that he was relying upon the rule of "past recollection recorded" in his use of the police report.  Clearly indicative of this approach is the first question asked with respect to the report: "Approximately how far North of Highway 40, *according to the*

---

1. "MR. KAVENEY: Your Honor, I will object to the form of the question.  He's already testi-fied he had no independent recollection of that.

THE COURT: That is correct, sir; sustained.

.   .   .   .   .

THE COURT: Apparently he has no indepen-dent recollection."

**104**

*report?"* (Emphasis added). When questioned specifically as to the statement of Ms. Shaw he testified that he was relying upon the police report. The rule is applicable "where the witness has no present recollection after referring to the memorandum but testifies that he once knew the facts and that they were accurately and correctly recorded in the memorandum he identifies." *Watson v. Meredith Development Co.,* 410 S.W.2d 338, 341 (Mo.App.1966). See also *State v. Bradley,* 361 Mo. 267, 234 S.W.2d 556, 560 (1950). In this case it is obvious that Officer Gentry was relying solely upon the report for his testimony respecting the statement of Ms. Shaw. The question asked was "[n]ow looking at your report so that we get this accurately, would you please tell the jury what Nancy Shaw said to you about how the accident happened?"

The report was prepared by Officer Duncan. The contents of the statement were verbally reported to Officer Duncan by Officer Gentry. There is no showing that Officer Duncan accurately recorded the information relayed to him by Officer Gentry. There is no showing that Officer Gentry had checked and approved the report shortly after it was prepared. There was no foundation laid for use of the police report as a memorandum of "past recollection recorded."

The one principle issue in the case was the speed of the motorcycle. It was the basis of defendants' contributory negligence instruction. The erroneous admission of the contents of the police report was prejudicial.

The remaining issue is not likely to arise in the same posture upon retrial and therefore we do not consider it.

The cause is reversed and remanded for a new trial.

KELLY, P. J., and SNYDER, J., concur.

