Laurel **FREY**, Plaintiff-Appellant,

v.

**BARNES HOSPITAL,**
**Defendant-Respondent.**

No. 48996.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 4, 1986.

Motion for Rehearing and/or
Transfer Denied March 11, 1986.

James F. Koester, St. Louis, for plaintiff-appellant.

Steven Sanders, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Laurel Frey, appellant, brought this action against Barnes Hospital, respondent, for the death of his spouse from alleged medical malpractice. The central issue at trial was whether the use of the anesthetic Halothane during Mrs. Frey's surgery was proper under the circumstances of this case. Appellant now appeals from the jury's verdict in favor of respondent and the trial court's denial of his motion for a new trial. We affirm.

Mrs. Frey was admitted to Barnes Hospital on March 18, 1981, for bilateral stripping and high ligation of varicose veins of the legs. Before surgery she underwent a battery of pre-operative tests. Dr. Walter Ballinger, Mrs. Frey's attending surgeon, advised her of the risks of surgery and the use of anesthesia. He advised her that the possibility of death or paralysis, although miniscule, was always present when an anesthetic was administered. On March 19, 1981, after Mrs. Frey signed a consent form for the administration of the appropriate anesthetic, Dr. Ballinger performed the operation. Eighteen days after the operation on April 6, 1981, Mrs. Frey died of hepatitis and other complications. Michael Downing, a registered nurse attending the Barnes Hospital School of Anesthesia, administered the anesthetic. Before and during the surgery, Downing was under the supervision of Nancy Kinker, a certified registered nurse anesthetist and clinical instructor at the school.

During pre-trial discovery, appellant's sole expert witness, Dr. Richard Gardner, an orthopedic surgeon, was deposed on December 29, 1982, at his office in Florida. At the deposition, respondent's counsel questioned Dr. Gardner on his knowledge of anesthesia and about his equipment for the administration of anesthesia. Appellant's counsel instructed Dr. Gardner not to answer certain questions and not to permit respondent's counsel to view his anesthesia equipment. As a consequence, respondent filed a motion to bar Dr. Gardner's testimony or to compel him to testify as requested. The trial court heard the motion and ruled

that appellant's counsel acted improperly and compelled Dr. Gardner to answer the questions and to permit respondent's counsel to view his anesthesia equipment. The trial court stated, however, if respondent requestioned Dr. Gardner, it would have to pay appellant's counsel's travel expenses to Fort Myers, Florida, where Dr. Gardner resided.

On April 5, 1983, respondent filed a motion to compel the production of Dr. Gardner as custodian of his medical records in order to discover the accuracy of his deposition testimony that he had performed hundreds of surgeries of all types. In its motion, respondent included pages from a deposition transcript of Dr. Gardner's testimony from another case, *Randall Dennis v. St. Elizabeth's Medical Center*, et al., which was then pending in Madison County, Illinois.[1] In the *Dennis* deposition, Dr. Gardner testified that he had not used inhalation anesthesia since moving to Florida in 1976. The trial court sustained respondent's motion but again upon the provision that respondent pay for appellant's counsel's travel expenses.

On May 7, 1984, respondent presented to the trial judge its motion in limine to bar the testimony of Dr. Gardner concerning the choice and use of anesthesia. The motion recited portions of the *Dennis* deposition which indicated inconsistencies in Dr. Gardner's testimony in the two depositions. The trial court, in camera, overruled respondent's motion. After that ruling the trial judge then discussed with the attorneys the admissibility of the *Dennis* deposition. What transpired in camera is discussed more specifically later in the opinion but for now the court overruled appellant's objection and permitted the use of the *Dennis* deposition by respondent.

At trial, the principal part of appellant's case was the deposition testimony of Dr. Gardner which was read by appellant's counsel to the jury. On "cross-examination" and without objection, respondent's counsel read portions of Dr. Gardner's depositions from both the instant case and the *Dennis* case.

From Dr. Gardner's deposition in the case at bar, respondent's counsel read the following excerpts to the jury:

Now since you've come to Florida here, you say you still give anesthesia? Yes, sir. Your nurse anesthetist doesn't always give it? No, she gives it, but I supervise it. Okay. Then I need to clarify my question. You personally, do you personally administer anesthesia here in Florida? Oh, yes, all the time. What kind do you personally administer? All kinds. Any general? Yes. *What kind of general do you personally administer? All kinds of general. Fluothane? Fluothane, Halothane, Enfluorane, epidurals, intravenouses, muscle relaxers.*

\* \* \* \* \* \*

In what percentage of your work here in Florida do you use Fluothane or Halothane? It's not a large percentage. Most orthopedics is done under a block epidural or Pentothal. Can you give me a percentage, 10 percent of your cases, or 20 percent, or 2 percent; what's your best estimate? It's not as much as we use Enfluorane. What is your best estimate as to the percentage of cases that you use Fluothane or Halothane? I have no idea. (Emphasis added).

Respondent's counsel then read the following excerpts from Dr. Gardner's deposition in the *Dennis* case.

You wouldn't do anything here that would require general anesthesia? Oh, yes, we use general anesthesia all the time, *not inhalational,* but intravenous. No respiratory anesthesia? No. Would you ever? We use Epidural, spinal, but *no inhalation anesthesia.* So you don't have an anesthesiologist or anything like

---

**1.** The *Dennis* deposition was taken on March 10, 1983.

The *Dennis* transcript disclosed the appearance for plaintiff in the *Dennis* case of James F. Koester, Inc. by James F. Koester. Mr. Koester represents appellant in the case at bar. The law firm of Shepherd, Sandberg & Pheonix appeared for St. Elizabeth's Medical Center; it represents respondent Barnes Hospital in the present case.

that? If we need one, we'll call one in. You don't have one in your employ? Not at the present time? Have you ever here at the Surgi-Center? We had people with that training working here, yes. Who are they? They were from a service. Some of them also had training in anesthesia. Do you remember any of their names? I gave the anesthesia in every instance.

\* \* \* \* \* \*

When is the last time that you performed surgery under general anesthesia? I'm talking about the inhaling type. Well, that would be when I was in Massachusetts. How long ago? 1975, just before I came to Florida, routinely performed inhalation anesthesia.

\* \* \* \* \* \*

You had general anesthesia inhalant equipment here in the hospital? Yes. But have you—But have never used it in the seven years you have been here in Florida? Not that I am aware of, no. (Emphasis added).

Respondent's counsel also read excerpts from Dr. Gardner's deposition in the present case alone. These excerpts included statements by Dr. Gardner that he had not served on the staff of any hospital in Florida since he moved there in 1976. Dr. Gardner explained that at every hospital where he applied for staff privileges, he withdrew his application out of the belief that "redneck" doctors from "the mountains" conspired to keep him out of the hospitals in the area where he lived.

After all the evidence, the jury returned its verdict in favor of respondent. On appeal, appellant raises two issues. First, he contends the trial court erred in admitting Dr. Gardner's *Dennis* deposition without establishing its identity, authenticity, and genuineness. Second, appellant argues the trial court erred in permitting respondent's counsel to read portions of Dr. Gardner's *Dennis* deposition because it was a deposition from an entirely different cause in a different state.

■ Appellant first alleges the trial court erred in admitting Dr. Gardner's *Dennis* deposition. We disagree. In this case, the *Dennis* deposition does not fail for want of identity, authenticity, or genuineness under either Missouri or Illinois law. The *Dennis* deposition was a discovery deposition taken pursuant to Illinois Supreme Court Rule 202. As such, the *Dennis* deposition was not filed with the trial court in Madison County, Illinois, and, therefore, not identified by the court clerk. Illinois Supreme Court Rule 207(b), however, provides that a deposition "requires no further proof of authenticity" than the transcribing officer's certification on the deposition that the deponent was duly sworn and that the deposition is a true record of the deponent's testimony.

In Missouri, Rule 57.07 governs the use of depositions in court proceedings. Before a party may use a deposition, the party must first prove the facts necessary to authorize its use. The necessary proof may be established by "the certificate of the officer taking the deposition or by any competent evidence." Rule 57.07(b). The officer's certification must state that the witness was duly sworn by him and that the transcript is a true record of the testimony given by the witness. Rule 57.-03(g)(1). Moreover, if the officer taking the deposition is a notary public, his certification accompanied by his seal of office constitutes sufficient evidence of authentication. RSMo § 492.370 (1978).

In the instant case, respondent filed the *Dennis* deposition with the trial court. With the deposition, respondent submitted an affidavit of the court reporter/notary public who attended and transcribed Dr. Gardner's testimony. In this affidavit, the court reporter certified that the *Dennis* deposition was a true and accurate copy of Dr. Gardner's testimony which was taken under oath. Moreover, the court reporter also certified on the transcript itself that Dr. Gardner was duly sworn by him and that the deposition was a true record of Dr. Gardner's testimony. Finally, the court reporter's certification was accompanied by his seal of office as a notary public. We

conclude that under the law of both Illinois and Missouri, respondent properly established the identity, authenticity, and genuineness of the *Dennis* deposition.

We next address appellant's second point on appeal. In this point, appellant contends the trial court erred in permitting respondent's counsel to read portions of Dr. Gardner's *Dennis* deposition because it was a deposition from an entirely different cause in a different state. Although not part of his point on appeal, appellant's argument implies that respondent's use of the *Dennis* deposition to impeach Dr. Gardner's testimony from the *Frey* deposition was improper because Dr. Gardner had no opportunity to explain or deny his statements.[2]

■ In order to impeach a witness with a prior inconsistent statement, it is axiomatic that a proper foundation be laid. The witness must be given a chance to refresh his recollection of the prior statement and to admit, deny, or explain it. *Aboussie v. McBroom*, 421 S.W.2d 805, 807 (Mo.App. 1967). To lay the requisite foundation, it is necessary to ask the witness whether he made the statement. *Eissler v. Londoff*, 677 S.W.2d 358, 360 (Mo.App.1984). It is essential to quote the prior statement and to point out the precise circumstances under which it was allegedly made, including the person to whom the prior statement was made and to the time and place of its utterance. *Id.*

The same is true in cases where a deposition is introduced. Inconsistent statements may not be shown unless a proper foundation for them was laid in the deposition. *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 198 (Mo.App.1984). The foundation requirement is mandatory even where the inconsistent statements sought to be used were made after the deposition introduced

was taken. *Gregory v. Cheatham*, 36 Mo. 155, 161–162 (1865).

■ Applying these rules to the instant case, it is clear that Dr. Gardner never had an opportunity to explain or deny any inconsistent statements he made in the *Dennis* deposition. As a resident of Florida, he was unavailable for respondent at trial as a matter of law. Because the *Dennis* deposition was held after Dr. Gardner's deposition in *Frey*, proper impeachment was not possible until respondent redeposed Dr. Gardner to examine his contradictory testimony. *Gregory*, 36 Mo. at 162. Although respondent obtained an order to compel Dr. Gardner's further testimony, it chose not to redepose him. As a result, the necessary foundation for impeachment by inconsistent statements was absent.

However, the rule requiring a proper foundation for impeachment by prior inconsistent statements would have worked unfairly against the respondent in the present case had the trial court applied it. Dr. Gardner's unavailability permitted appellant to introduce his *Frey* deposition at trial, yet, at the same time, his unavailability would have precluded the laying of a foundation for his impeachment. Because of this inequitable result, some commentators are in favor of dispensing with the foundation requirement where depositions are used. They argue that because the impeacher cannot know precisely what answers the deponent will give, he cannot be prepared at the time of the deposition to inquire into contradictory statements. Therefore, the impeacher is cut off absolutely and unconditionally from impeachment by inconsistent statements. 3A Wigmore, *Evidence* § 1031 at 1033 (Chadbourn rev. 1970).

**2.** Appellant's second point reads as follows:
 The trial court erred by allowing the attorney for defendant to read portions of a deposition of plaintiff's expert, Dr. Richard Gardner, which was taken in another cause of action in the State of Illinois.
 Although appellant's point expresses the "wherein" of the trial court's alleged error, appellant's

point fails to address "why" the trial court's action was allegedly wrong. As such, his point is in violation of Rule 84.04(d). We, therefore, direct appellant's attention to *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), for an analysis of the requirements specified in Rule 84.04(d).

Our court has recognized the incongruities raised by this problem in *State v. Ivicsics*, 604 S.W.2d 773 (Mo.App.1980), where we analyzed the analogous question of impeaching former testimony at trial. In *Ivicsics*, we eliminated the foundation requirement for impeachment of an unavailable witness whose preliminary hearing testimony was received earlier in evidence. *Id.* at 780–81. To mitigate any inequity derived from the absence of the foundation requirement, we adopted a balancing approach which spread the possible procedural unfairness equally between the parties. *Id.* at 780.

Applying such a balancing test to the present case, we conclude that respondent's use of the *Dennis* deposition was proper. The foundation requirement is designed to prevent unfair surprise to the party offering a witness. Here, there was no possibility that appellant could have been surprised by respondent's use of the *Dennis* deposition. Appellant was given notice more than a year in advance that respondent was aware of the *Dennis* transcript and was calling it into play. On April 5, 1983, respondent filed a motion which incorporated portions of the *Dennis* deposition.[3] Moreover, during the motion in camera on Monday, May 7, 1984, appellant's counsel was advised that respondent intended to read from the *Dennis* transcript. Tuesday, May 8, 1984, was a state holiday. On Wednesday, May 9, 1984, the trial recommenced. Therefore, both before and at trial, appellant had ample opportunity to notify Dr. Gardner and to present him to explain or rebut his testimony in the *Dennis* deposition.

 In addition, we find that appellant failed to properly preserve his argument for purposes of appeal. We may only entertain an objection to evidence on appeal upon the basis of the same objection presented to the trial court; it may not be enlarged on appeal. *Cheek v. Weiss*, 615 S.W.2d 453, 456 (Mo.App.1981). Indeed, it is axiomatic that one may not raise a new objection to the admission of evidence which differs from the objections raised at trial. *Phillips Pipe Line Company v. Ashley*, 605 S.W.2d 514, 518 (Mo.App.1980). *See Wilkins v. Cash Register Service Company*, 518 S.W.2d 736, 749 (Mo.App. 1975). Although appellant stated that respondent's use of the *Dennis* deposition to impeach Dr. Gardner was improper because Dr. Gardner had no opportunity to explain his *Dennis* testimony, he did not raise this contention in his point on appeal nor specifically make this objection at trial or in his motion for a new trial.

When the issue of the *Dennis* deposition was first argued during the motion in camera on Monday, May 7, 1984, counsel for appellant advised the trial court that he was going to object. When the trial court asked counsel the legal basis for his objection, he responded, "Well, I hate to give them to you now. I don't want [respondent's counsel] to cure them tomorrow."

On Wednesday, May 9, 1984, in camera, respondent's counsel announced his intention to impeach Dr. Gardner's *Frey* deposition. In answer to respondent's proposed use of the *Dennis* deposition, appellant's counsel made the following objections:

> MR. KOESTER: *I object to it because there is no identification, qualification.* It's not shown to be an official court record, it's not a business record. He walks in here with some photocopy of a deposition which I, incidentally, did not attend. Although my name appears there, Jim Logan was the attorney. It's his personal case. It is in my office, the file is in my office, Logan is in my office. So to that extent, I have some connection with the case.[4]

**3.** At trial, appellant's counsel advised the trial court that he did not personally attend the *Dennis* deposition.

The record, however, discloses that counsel for appellant had intimate knowledge of the *Dennis* deposition. The *Dennis* transcript indicates appellant's counsel as appearing at the deposition. Indeed, between pages 116–125 of the *Dennis* transcript, appellant's counsel's cross-examination of Dr. Gardner is recorded.

**4.** *See* Footnote 3.

But I don't know—I didn't know anything that was in the Dennis deposition, and Jim Logan took the deposition. And I don't see how you can bring a deposition—the only deposition I've ever seen used in a trial is where they bring the clerk in and they identify the record as being an official record of the court. This is a case from the State of Illinois. It was in Madison County, as I see the deposition. It's not even a Missouri case.

*And, so I'm going to object to the use of the deposition for those, and any other reasons I can't think of right now.* (Emphasis added).

After appellant's counsel made his objections, respondent's counsel argued that the *Dennis* transcript was properly authenticated. Respondent's counsel also reiterated his intention to use the *Dennis* deposition to impeach Dr. Gardner's testimony by prior inconsistent statements. In response, appellant's counsel stated that Dr. Gardner would have "no opportunity to deny it." Thereafter, respondent's counsel and the trial court engaged in a dialogue on the propriety of the *Dennis* deposition's use. Throughout this discussion, appellant's counsel remained silent. He never expanded his previous objections to include improper impeachment or the failure to lay the requisite foundation for prior inconsistent statements. In fact, before the trial court overruled appellant's objections, the court asked appellant's counsel whether he had anything further to say. Appellant's counsel responded, "Nothing additional."

After returning to the courtroom and respondent's counsel began to impeach Dr. Gardner's testimony in the *Frey* deposition with his *Dennis* testimony, appellant's

counsel never specifically objected to the *Dennis* deposition on grounds of improper impeachment or failure to lay the requisite foundation for prior inconsistent statements. Indeed, he made no further objection to the *Dennis* deposition at all. Nor did appellant's counsel raise these specific objections in his motion for a new trial. There, he posited "[t]hat the court erred in permitting counsel for [respondent] to read to the jury portions of a deposition from another case relative to the deposition of Dr. Richard Gardner in that no foundation nor identification was laid for the use of said deposition." [5] Appellant also contended "[t]hat the use of the deposition testimony of Dr. Richard Gardner from another case was irrelevant, immaterial and prejudicial to [appellant's] case." Thus, appellant's contention that respondent's use of the *Dennis* deposition constituted improper impeachment was not preserved for purposes of appeal. Appellant never expressly objected at trial or in his motion for a new trial to the *Dennis* deposition on the ground presented on appeal and, therefore, is in no position to now complain.

■■■ Nor do we find any basis for invoking the plain error rule sua sponte. The rule may not be invoked to excuse mere failure to timely and properly object. *Brown v. Boyd,* 422 S.W.2d 639, 643 (Mo. 1968). Here the appellant failed to properly object in camera and failed to offer any proper objection to the submission of the *Dennis* deposition at open trial. Plain error may be resorted to only in those exceptional circumstances when the reviewing court deems that manifest injustice or miscarriage of justice has occurred. *Birmingham v. Coen,* 320 S.W.2d 509, 510 (Mo.

5. The word "foundation" as used in the motion for a new trial was too general to preserve appellant's argument that the use of the *Dennis* deposition constituted improper impeachment. *Fuerst v. St. Louis Public Service Company,* 368 S.W.2d 550, 553 (Mo.App.1963). Its use in the motion is void of meaning. A fair reading of the motion does not reveal whether appellant meant failure to lay a proper foundation to establish the *Dennis* deposition's identification, authenticity, or genuineness or the failure to lay the requisite foundation for impeachment by

inconsistent statements. This problem of vagueness is exacerbated by appellant's second point on appeal which is contrary to the requirements of Rule 84.04(d) and by the fact that appellant's counsel never used the word "foundation" before the trial court or in his brief before this court. The only guidance left to us is respondent's response to appellant's new trial motion which clearly understood the word "foundation" as used in appellant's motion to refer to the *Dennis* deposition's identification and authenticity.

1959). We find no exceptional circumstance and therefore affirm the judgment.[6]

Judgment affirmed.

CRANDALL, P.J., concurs.

SATZ, J., concurs in separate concurring opinion.

SATZ, Judge, concurring.

I concur only in the result reached by the majority. I write a concurring opinion because I disagree with the majority's reasoning both in broad compass and narrow detail.

The majority affirms the trial court on procedural grounds and for reasons based upon the merits. I address both.

### Procedural Grounds

As an intermediate court of appeals, we are, to be sure, a "court of error;" a court whose primary if not sole purpose is to correct error. This purpose is reflected in our procedural rules for appeal. For us to consider an issue asserted to be erroneously decided by the trial court, the issue must have been presented properly to the trial court, Rule 78.09, and it must have been preserved properly in the motion for a new trial, Rule 78.07. The majority concludes plaintiff failed to meet each of these requirements. I disagree.

At trial, plaintiff's expert, Dr. Gardner, testified by deposition (*Frey* deposition). Defendant wanted to impeach this testimony with testimony of Dr. Gardner taken in a subsequent deposition (*Dennis* deposition). Plaintiff's counsel initially objected to the use of the *Dennis* deposition because defendant failed to "identify" or "qualify" it:

Plaintiff's counsel: "I object to [the *Dennis* deposition] because there is no identification, qualification. It is not

shown to be an official court record, it's not a business record...."

Then, after a discussion off the record, the court noted: *"[o]ne of* [plaintiff's] objections is based on the authenticity of it." (emphasis added) In response, defendant's counsel argued:

"authenticity is not that big of an issue since you could even have a witness coming in and say, 'I heard him make it.'
....
Now, the point is, I should be able then to read from his deposition and have it treated precisely as if he was in (sic) the witness stand speaking it. And once I've done that, the Dennis deposition becomes a prior inconsistent statement which I can use to impeach him."

Plaintiff's counsel immediately responded to the reference to a "prior inconsistent statement:"

"Now that's the point. He could impeach him, but Gardner could deny the statement. He has no opportunity to deny it."

This is not an imprecise equivocation. The objection was simple and direct. Plaintiff's counsel objected to the use of the *Dennis* deposition because Dr. Gardner would be unable to deny or explain away any alleged inconsistent statement in that deposition. There is no question the court understood the objection. This can be seen by the court's verbalized ruminations after the objection was made:

Court: "Well, [plaintiff's counsel] is arguing that you [defendant's counsel] should have attempted to impeach [Dr. Gardner] at the deposition. And since you didn't, it's barred now because he has no opportunity to explain away the so-called contradictory material. What about that?

[Defendant's counsel]: ....

---

6. In its order denying appellant's motion for a new trial, the trial court stated, "If it was error for the Court in this cause to have permitted counsel for [respondent] to read portions of a deposition from another cause that error was not prejudicial. The Court finds that in light of the testimony of Dr. Gardner as a whole in addition to the other evidence presented, the reading of a brief portion of the deposition from another cause containing minor conflicts on collateral matters did not substantially affect the verdict so as to warrant the granting of a new trial."

Court: [Since the alleged inconsistent statement has now been made], the argument is that you should have taken [Dr. Gardner's] deposition a second time, . . ., to try and impeach him. Is it fair to be able to impeach him when he doesn't have any chance to answer? . . . .

. . . .

[W]hy doesn't the defendant have the problem of straightening everything out before impeachment, rather than requiring the plaintiff to attempt to cover the impeaching matter by something the plaintiff has to do?

[Defendant's counsel]:

. . . .

Court: All right. Let me go over this in my own mind a minute. There's a fundamental principle that before you can discredit somebody, they have to have an opportunity to explain away . . . how they were discredited. They at least ought to have a fair opportunity to come back at you when you seek to do that. That's been violated here in a sense, because the Dennis deposition was taken after the Frey deposition. The Dennis deposition supposedly contains the inconsistent statements, and Dr. Gardner doesn't have any chance to explain those away."

From these ruminations, it is crystal clear the trial court knew plaintiff's counsel was objecting to the use of the *Dennis* deposition for impeachment because this use would deny Dr. Gardner an opportunity to deny or explain making any alleged inconsistent statements. That is all Rule 78.-09 and case law interpreting it require. *Brookman v. General Safety and Security, Inc.*, 600 S.W.2d 100, 103 (Mo.App. 1980). The trial court simply has to be made aware of the issue, nothing more. *Id.* The precise method of making the court aware of the objection is irrelevant. Moreover, the silence of plaintiff's counsel during the colloquy between the court and defendant's counsel does not erase the knowledge of plaintiff's objection from the court's mind. Plaintiff's counsel was simply following the hoary legal maxim:

"when you think you're ahead, keep your mouth shut." In short, to require more of the plaintiff's counsel after the court obviously knew the thrust of his objections is an exaltation of form over substance.

The majority also concludes plaintiff did not preserve this issue for review in his motion for a new trial. Again, I disagree. The majority demands more from plaintiff than our Rules require.

Rule 78.07 provides that a specific objection made during trial is preserved in a motion for a new trial by "a general statement . . . of any allegations of error based" on the objection. Rule 78.07. What general statement will suffice varies from case to case. But, the Rule merely requires a general phrase, term or word sufficient to inform the trial court the general assertion in the motion for new trial is a continuation of the objection made at trial and the objection has not been abandoned. *See, e.g., State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc.,* 375 S.W.2d 92, 95 (Mo.1964); *Hartley v. Matejka,* 585 S.W.2d 240, 242 (Mo.App.1979). Consequently, the assertion of error in the motion for new trial does not have to be as explicit or specific as the objection made at trial.

As just discussed, plaintiff raised two objections to the use of the *Dennis* deposition at trial. One was based on the identity or, as the trial court understood it, the authenticity of the deposition. The other was based on defendant's failure to lay a proper foundation for impeachment by inconsistent statements. In his motion for new trial, plaintiff asserted that "no foundation nor identification was laid for the use of the deposition." According to the majority, plaintiff's use of the term "foundation" is void of meaning because a "fair reading" does not indicate whether plaintiff was asserting the foundation was improper because of the lack of "identification, authenticity or genuineness" or because of the failure to lay a proper foundation for impeachment by inconsistent statements. To me, the majority's reading is unduly

narrow, unnecessarily rigid and, thus, unfair.

Foundation simply means the preliminary questions to a witness essential to establish the admissibility of evidence. *See, e.g., Black's Law Dictionary* 591 (5th ed. 1979). Normally, part of the foundation for impeaching a witness by a prior inconsistent statement is asking the witness whether he made the inconsistent statement. At trial, the witness can either admit the statement, deny it, explain it away or say he does not remember. Dr. Gardner's absence at trial precluded defendant from asking this question. Plaintiff therefore objected to this lack of foundation. However, even without Dr. Gardner's comments, defendant still had to show that Dr. Gardner did in fact make the alleged inconsistent statements. Defendant wanted to make this showing through the *Dennis* deposition without a sponsoring witness. To do this, defendant had to show the *Dennis* deposition was in fact what defendant purported it to be. Plaintiff objected that defendant failed to make this showing because defendant failed to establish the "identity" of the deposition. The court understood plaintiff's use of the term "identity" to mean authenticity.

From the record, then, it is clear the trial court would understand plaintiff's objection —"no foundation"—consisted of plaintiff's objection to the "authenticity" of the *Dennis* deposition and the failure to give Dr. Gardner the opportunity to deny or explain away the alleged inconsistent statement. The trial court therefore would also have understood these two basic objections were being continued if plaintiff had merely asserted in his motion for new trial: "no foundation has been laid." To me, plaintiff's use of the additional word "identification" is simply superfluous and does not obfuscate plaintiff's assertion.

Nor do I accept the majority's view that plaintiff was required to distinguish between the terms "identification," "authenticity" and "genuineness" and assert explicitly which of these were in question. The trial court believed plaintiff was questioning the "authenticity" of the *Dennis* transcript. This is understandable. "Authentication," "identification" and "genuineness" do, perhaps, have separate and distinct meanings in a class room setting. These meanings, however, are not mutually exclusive. In practice, the terms "authenticity" and "genuineness" are used interchangeably, particularly when a writing is in issue. 3 Jones, *Evidence* § 17:17, at 272 (6th ed. 1972). Moreover, the foundation for "authentication" and "identification" may be and often is the same. *See, e.g.,* Fed.R.Evid. 901. The trial judge and counsel here were not neophytes caught in the seamless web of the law. They understood the process as it was unfolding, so much so, that defendant's counsel raised no argument about plaintiff's asserted failure to preserve this issue for appeal.

On this record, to reject plaintiff's assertion of error in his motion for new trial as too general simply means plaintiff had to make the assertion in his motion as explicit as his objection at trial. This is not what Rule 78.07 says, and this is not what it means.

### Merits

As has been noted, a foundation must be laid before a witness may be impeached by a prior inconsistent statement. Normally, this foundation is laid by asking the witness whether he made the alleged inconsistent statement, specifying the time, the place, and the person to whom made, as well as the words or substance of the inconsistent statement. *E.g., State v. Graves,* 588 S.W.2d 495, 498–99 (Mo. banc 1979); *State v. Vaughn,* 501 S.W.2d 839, 842 (Mo. banc 1973). The primary purpose of this rule is to warn the witness that evidence of a statement will later be offered to impeach him and, thus, give him the opportunity to deny or explain the statement. *Aboussie v. McBroom,* 421 S.W.2d 805, 807 (Mo.App.1967).

A problem arises in the present case because the witness to be impeached, Dr. Gardner, was absent at trial and, therefore, testified by deposition. Strictly enforcing

the foundation requirement would make Dr. Gardner immune from impeachment by an inconsistent statement and would appear to shield Dr. Gardner, already immune from cross-examination at trial, from defendant's only practicable method of attack. Dr. Gardner's legal unavailability makes his *Frey* deposition testimony admissible at trial, and, at the same time, prevents the laying of a foundation at trial for impeaching that testimony. Plaintiff gets the best and the defendant the worst of both possible worlds.[1]

This recitation creates a sense of unfairness to defendant. The recitation, however, omits essential facts. Defendant had ample opportunity prior to trial to impeach Dr. Gardner with his allegedly inconsistent statements, and defendant consciously chose not to do so.

In December 1982, Dr. Gardner's deposition was taken in Florida. (*Frey* deposition). In January 1983, because of Dr. Gardner's refusal to answer certain questions, defendant moved to compel Dr. Gardner to answer those questions and to compel plaintiff or plaintiff's counsel to pay the fees and expenses of defendant's counsel. The court sustained the motion but required defendant to pay "airfare and transportation of plaintiff's attorney." From the record, defendant apparently chose not to follow this order. In March 1983, the *Dennis* deposition was taken. The following month, defendant again filed a motion to compel plaintiff to produce Dr. Gardner for deposition, informing the court of possible inconsistent statements. The court sustained the motion but again ordered defendant to pay "transportation and any required lodging of plaintiff's counsel." Defendant also chose not to follow this order.

Thus, for fourteen months, from the date of the *Dennis* deposition until trial, the defendant had the opportunity to depose Dr. Gardner. He failed to pursue this opportunity. Apparently, defendant did not

agree with the trial court's order requiring him to pay for the transportation and lodging of plaintiff's counsel. Defendant's real complaint is that he did not like the trial court's order. He can hardly complain he was denied his right of cross-examination, however, when he, himself, chose not to exercise that right. Thus, were the issue of fairness here to be decided, as the majority decides it, on the knowledge each of the parties had before trial, I would reverse the trial court's ruling.

This issue, however, should not turn on who knew what, when. Obviously, defendant did know about the alleged inconsistency of Dr. Gardner's statements after the *Dennis* deposition. To make defendant then pursue his impeachment of Dr. Gardner by another deposition in the *Frey* case places an affirmative duty on him to cross-examine Dr. Gardner again prior to trial. Defendant had no assurance, however, that plaintiff would not call Dr. Gardner to testify in person. Thus, there is no reason to put defendant to the time and expense of redeposing Dr. Gardner.

More important, to me, the majority opinion teaches or implies that defendant would be precluded from using the *Dennis* deposition if plaintiff did not know about Dr. Gardner's statements in that deposition; as would be the case here if plaintiff's attorney were not the attorney of record at the *Dennis* deposition. This rule reaches too far. In the present case, the testimony of Dr. Gardner, an absent witness, is being impeached by his own deposition testimony. Once the authenticity or genuineness of the deposition is established there is no question he made the statement and no question about the context in which the statement was made. The only essential question then is whether the statement is, in fact, inconsistent. This question is easily resolved by the preadmission determination of the trial court.[2] Therefore, on balance, I

---

1. Whether the impeachment is inadmissible as an improper collateral matter is not before us.

2. This is quite different from impeaching an absent witness' testimony by a live witness testi-

fying to inconsistent statements he allegedly heard the absent witness make. In that instance, there is a temptation to manufacture the alleged inconsistent statement which the absent

would permit the impeachment of an absent witness' deposition testimony by allegedly inconsistent statements made in a subsequent deposition, regardless of the knowledge of the parties.

This same critical impeachment issue has arisen in other situations when the testimony of an absent witness is admitted—"testimony [of the witness] at a former trial; ... dying declarations, statements against interest, etc.; ... statements of an attesting witness to a document; [and] ... proposed testimony admitted by stipulation to avoid a continuance." 3A Wigmore, *Evidence* § 1030 at 1033 (Chadbourn rev. 1970). By rule, several jurisdictions have allowed impeachment by inconsistent statements in all these instances, as well as the one here, without the prior laying of a foundation.[3] Admittedly, there is security and comfort in providing this uniform rule rather than disposing of the issue on a case-by-case basis. The problem of the uniform rule, however, is that fact situations creating the issue require different considerations for a fair disposition. For example, in *State v. Ivicsics*, 604 S.W.2d 773 (Mo.App.1980), a witness who had testified at the preliminary hearing was legally unavailable at trial. The state was permitted to use the absent witness' preliminary hearing testimony at trial. According to the defendant, another witness had heard the state's witness contradict his preliminary hearing testimony. Being unable to cross-examine the state's witness at trial, the defendant wanted to impeach the preliminary hearing testimony of the state's witness with the testimony of his own witness without laying a foundation. Moved by the unfairness to the defendant, we stated the defendant could do so. 604 S.W.2d at 781. In reaching this conclusion, we acknowledged that permitting impeachment of an absent witness by a live witness is a tempting invitation to manufacture inconsistent statements. *Id.* at 780–81. This temptation has been increased and made more acute with impeachment testimony now being admissible as substantive evidence. *See Rowe v. Farmers Insurance Co.*, 699 S.W.2d 423 (Mo. banc 1985). Perhaps, *Ivicsics*, would be decided differently, today. In any event, the configuration of the problem presented in *Ivicsics* is not present here.

Because I believe impeachment of an absent witness' deposition testimony by allegedly inconsistent statements made in a subsequent deposition is permissible, I concur in the result reached by the majority.

---

witness has had no opportunity to deny or explain.

3. *See, e.g.,* Cal.Evid.Code § 1202 (West 1966); Kan.Stat.Ann. § 60–462 (1983); Fed.R.Evid. 806.

Cal.Evid.Code § 1202 reads:

*Credibility of hearsay declarant.* Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant. (Stats.1965, c. 299, § 1202.)