**William L. CONNOUR, Respondent,**

v.

**BURLINGTON NORTHERN RAILROAD CO., Appellant.**

**No. WD 48667.**

Missouri Court of Appeals,
Western District.

Nov. 22, 1994.

Charles Marshall Friedman, St. Louis, for respondent.

Russell Charles Ashley, Kansas City, for appellant.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

William L. Connour was the plaintiff below in his Federal Employer's Liability Act (FELA) claim against Burlington Northern Railroad Co. (BNRR). Liability was admitted by BNRR and the case was tried to a jury on the nature and extent of Connour's injuries and the resulting damages. The jury returned a verdict of $200,000 and BNRR appealed.

Connour's right arm was caught between two large shaped steel "wing sheets." He sustained bruises and abrasions to the right forearm. The arm was not fractured. These wing sheets weigh approximately 400 to 500 pounds each and are put in place by an overhead crane. While placing the wing sheet in position, Connour's arm was pinned between the wing sheets. The arm was bruised from the palm to beneath his armpit. After receiving emergency treatment, he was treated by Drs. Pazell, Schwab and Bobenhouse.

Dr. Schwab, an orthopedic surgeon, diagnosed Connour's condition as "moderate severe contusion of the right forearm with periosteal contusion mid-ulnar region and a mild lateral epicondylitis." Dr. Schwab recommended "continued rest and continued activity, return, I think, in three weeks, continue with light work duties or sedentary work activities."

Dr. Bobenhouse, a neurologist, examined Connour. Dr. Bobenhouse diagnosed Connour's condition as "a right forearm contusion with probable ulnar nerve irritation or injury, ... that he had right shoulder pain and upper arm pain related to the muscle strain while attempting to pull his arm out of the pieces of metal. There was a slight suggestion of irritation of the muscles on the EMG testing, which is the needle test, where we insert needles into the muscles to look for nerve damage." Dr. Bobenhouse stated he thought there was a mild stretch injury to the brachial plexes. Dr. Bobenhouse also stated, "I thought that there may have been a superimposed thoracic outlet syndrome at that time as well."

Dr. Pazell diagnosed Connour as having a "status post release for lateral epicondylitis." Further, Pazell testified, "I think he's still got disease in the radial capitular joint or inside the elbow ... and he's got cubital tunnel syndrome ..."

BNRR raises three points of trial court error. 1) The trial court erred in overruling BNRR's objection to improper cross-examination by plaintiff of BNRR's employee/witness Patricia Heather. 2) The trial court erred in overruling BNRR's objection to improper argument personally attacking BNRR, and; 3) the trial court abused its discretion in overruling BNRR's motion to dismiss grounded on forum non convenes.

I

BNRR alleges in Point I that the trial court erred in overruling its objection to the cross-examination of employee witness, Patricia Heather, which allowed plaintiff to reference depositions of other employees of BNRR taken in other lawsuits against BNRR. BNRR contends it was prejudiced on the issue of Connour's claim for damages for loss of future earnings from employment with the railroad.

Patricia Heather is a senior claim representative for BNRR. She testified on direct examination that BNRR attempts to get injured workers back to employment as quickly as possible and that the railroad allows injured workers to perform restricted duties or modifies the work place to allow injured workers to continue to work. On cross-examination, Connour's attorney, Douglas K. Rush, asked Ms. Heather, "Who is Mr. Stremcha?". Ms. Heather answered, "Mr. Stremcha is the Superintendent of the Havelock Shops." Counsel for BNRR stated:

Excuse me, your Honor. May we approach? Now, yesterday Mr. Rudd cross-examined witnesses on the stand from depositions taken of other persons not in this case and not the witness on the stand regarding the, I suppose whatever is suggested by the testimony in those depositions taken in other cases of other persons, and I think it is entirely inappropriate to do that in this case, to cross-examine a witness on the stand not from their own deposition, not from the deposition of any witness in this case, but from some transcript from some other case and I object to it ...

Following remarks by Mr. Rush, BNRR's attorney added:

Well, I haven't heard anything that makes the cross-examination of this witness proper with those depositions to attempt to bootstrap in some cross-examination from some other deposition of another person.

The objection was overruled. Mr. Rush proceeded to ask Ms. Heather about Mr. Stremcha and the deposition he gave in the case of *Gustafson vs. Burlington Northern Railroad.* No further objection was offered by counsel for BNRR. Mr. Rush also asked Ms. Heather about Joe Burroughs, the director of shop operations at Havelock, and the deposition he gave in the *Gustafson* case. BNRR did not object. BNRR concedes the purported testimony read by Mr. Rush was not necessarily contrary to what Ms. Heather had testified, but contends its use to cross-examine her suggested a contradiction and that some portions of the disputed testimony were open to interpretation and argument.

We first look at the use of the Stremcha deposition. A review of the transcript indicates Ms. Heather agreed with the testimony read to her from the Stremcha deposition. Heather was asked if she remembered Stremcha stating that BNRR had no positions at Havelock that "will accommodate an employee for the remainder of their career with lots of restrictions;" that the railroad creates positions for persons with limited restrictions for a short period of time; and that BNRR has no people that work for a "long, long period of time with multiple restrictions." Ms. Heather answered, "I don't remember specifically, but that's certainly true." Ms. Heather also agreed with Mr. Stremcha deposition testimony that he could order a "fit-for-duty examination[ ] by a doctor of the Burlington Northern's choosing?" Ms. Heather was also given opportunity on redirect examination to fully explain her understanding of the policies of BNRR concerning light duty, physical restrictions on employees, and the railroad's vocational retraining program. BNRR failed to make specific objections to this procedure as it unfolded.

■ The instant case is similar to *Frey v. Barnes Hospital,* 706 S.W.2d 51, 57 (Mo.App. 1986) where the court held that the plaintiff's contention that the defendant's use of a deposition constituted improper impeachment of his expert witness was not preserved for purposes of appeal where the plaintiff never expressly objected at trial. In *Frey,* the plaintiff made a general objection to the use of the deposition. The Court suggests that because plaintiff "never expanded his previous objections to include improper impeachment or the failure to lay the requisite foundation for prior inconsistent statements" the issue was not preserved for appeal. *Id.* The same should apply to the present case. A general objection preserves nothing for review. *Bergel v. Kassebaum,* 577 S.W.2d 863, 870 (Mo.App.1978).

■ After Mr. Rush questioned Ms. Heather about Mr. Stremcha's deposition testimony, he questioned her about Joe Burroughs and his deposition testimony. There was no objection to the use of the Mr. Burroughs' deposition.

■ Objections to the admission of evidence must be timely and specific. *Appelhans v. Goldman,* 349 S.W.2d 204, 207 (Mo. 1961).

... Relevant evidence received without objection may be properly considered, although it would have been excluded on proper objection. * * * Even hearsay evidence without objection has been considered. * * * A rule of evidence not invoked is waived. *Id.*

BNRR did not object to the use of Mr. Burroughs' deposition in the cross-examina-

tion of Ms. Heather. We cannot find that the trial court erred in allowing the use of Mr. Burroughs' deposition, when a timely and specific objection to its use was not made by BNRR. Point I is denied.

## II

■ For its second point BNRR claims the trial court erred when it overruled "defendant's objection to improper argument personally attacking defendant, allowing plaintiff's counsel to invoke prejudice against defendant by arguing that defendant and defendant's attorney had misrepresented the facts, tried to confuse the jury and thrown up a smoke screen which resulted in an excessive verdict."

Mr. Rush, delivered the plaintiff's closing argument. At one point he stated:

> There has been another party in this lawsuit who have made promises to you from the beginning about what the evidence would show, that didn't show that. They have made statements to you that are flat misrepresentations of the facts that later came out in this court, and they have been trying to confuse you and throw up smoke screens.

BNRR's attorney offered the following in response to this statement:

> MR. ASHLEY: Ho, ho, ho, excuse me, Your Honor. I object to the personal attack on defendant in this case. That's an improper argument.

The court overruled the objection and advised the jury that "this is argument."

This was the only objection interposed by BNRR during plaintiff's closing argument and BNRR made no further objections during plaintiff's final argument.

■ It is clear that BNRR failed to make specific objections upon which the trial court could rule. The trial court controls the argument and has wide discretion over closing arguments. Unless it appears clear that the trial court abused its discretion, its rulings will not be disturbed on appeal. *State v. Hampton,* 653 S.W.2d 191, 195 (Mo. banc 1983). Our supreme court has held that to

argue in closing argument that defense counsel was creating a "smoke screen" was not an abuse of discretion. *State v. Mitchell,* 611 S.W.2d 223, 227 (Mo. banc 1981).

■ The general proposition is that counsel is given wide latitude in closing argument. *Moore v. Missouri Pacific R. Co.,* 825 S.W.2d 839 (Mo. banc 1992). Because BNRR's attorney failed to make timely specific objections to those portions of the closing argument, he may not now complain about trial court error. "The trial court is in the best position to appraise the consequences of a closing argument, and the appellate court may intervene only if it concludes that the trial court has abused its discretion." *Robertson v. Cameron Mutual Ins. Co.,* 855 S.W.2d 442, 447 (Mo.App.1993). Point II is denied.

## III

■ For its third and final point, BNRR alleges the trial court erred when it denied their motion to dismiss based on the theory of forum non conveniens. BNRR employed Connour as a carman at the Havelock Shops in Lincoln, Nebraska. In this capacity he sustained injuries to his right arm.

BNRR's action was instituted and proceeded under 45 U.S.C., Section 51, et seq., commonly known as FELA. Suit was instituted in Jackson County, Missouri. BNRR has extensive holdings in the greater Kansas City area. It interchanges freight in Kansas City with nine other railroads. It has large rail yards, including Murray yards in Kansas City. It services many local industries in Kansas City and has over 1,400 miles of trackage in Missouri. It enjoys the right of imminent domain, fire, police and other governmental services.

BNRR's chief medical officer, Dr. Thomas V. Mears is located in Overland Park, Kansas, a bedroom community of Kansas City. It was expected that Dr. Mears would be a witness for BNRR. The Safety Department of BNRR and its Operation Department are also located in the greater Kansas City area.

There were two witnesses to Connour's accident. Jack Sparks was a co-worker with BNRR when he was injured. Mr. Sparks is employed by BNRR in Springfield, Missouri and resides in Springfield. Charlie Brown, the crane operator, apparently lived in Nebraska.

It is approximately 150 to 200 miles from the site of BNRR's injury to Kansas City. The court takes judicial notice that it is approximately 184 miles from Springfield to Kansas City. Thus, making a trip from Springfield to Nebraska approximately 364 miles. Connour's attorneys are from Missouri, and were not licensed to practice law in Nebraska.

Connour's treating physicians were in Nebraska and were deposed and their depositions were used at trial. BNRR complains that the only reason the suit was filed in Jackson County, Missouri was "the likelihood that this venue would be more profitable to plaintiff." Did the trial court abuse its discretion in failing to sustain BNRR's motion to dismiss plaintiff's suit under the doctrine of forum non conveniens? The record herein consists of the BNRR's answer, first amended answer, and verified motion to dismiss. Plaintiff and plaintiff's attorneys each filed affidavits. The affidavit of plaintiff's attorney was in great detail encompassing 15 pages. Plaintiff also filed a 38 page "Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Forum Non Conveniens." BNRR did not file such a memo of law.

BNRR's affidavit alleged that material witnesses worked and resided in Nebraska and that Connour's medical treatment occurred in Nebraska. The venue of Jackson County, Missouri has no relationship to the cause of action. Witnesses and records are in Nebraska and are not subject to subpoena by courts in Jackson County, Missouri, a possible concern for Connour. BNRR can require its employees to appear as they direct with records they require. This then is a fallacious argument. Connour submitted his medical by depositions. He appeared in Kansas City on two occasions to be examined by Dr. Ernest Neighbors, at no expense to BNRR.

■ The application of the doctrine of forum non conveniens is "fact intensive" and the weight to be applied to any fact is dependent on the circumstances. Trial court discretion is essential and must be applied with control, not whimsy. *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). *Besse v. Missouri Pacific*, 721 S.W.2d 740 (Mo. banc 1986), *cert. denied* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

■ Six factors were set forth for the trial court to consider as a guide in using their discretion in applying the doctrine of forum non conveniens.

(1) place of accrual of the cause of action,

(2) location of witnesses,

(3) the residence of the parties,

(4) any nexus with the place of suit,

(5) the public factor of the convenience to and burden upon the court, and

(6) the availability to plaintiff of another court with jurisdiction of the cause of action affording a forum for plaintiff's remedy.

*State ex rel. Chicago Rock Island & Pacific R. Co. v. Reiderer*, 454 S.W.2d 36, 38–39 (Mo. banc 1970). *Reiderer* nor its progeny give an exclusive listing of matters to be considered when a trial court decides whether or not to apply the doctrine of forum non conveniens. Nor does *Reiderer* address how much weight the trial court should give each factor.

■ In the instant case, the trial court might have sustained the motion to dismiss without abusing its discretion. However, to reverse the trial court's discretionary decision requires more than showing the motion could have been sustained. *Anglim*, 832 S.W.2d at 305. We are not convinced that the facts strongly favor dismissal. We agree with the court in *Anglim* which stated:

> ... In sum, after reviewing the record and considering all relevant factors, it cannot be said that the trial court's ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Thus, no abuse of discretion has occurred. *Id.*

BNRR's point III is denied.

The judgment is affirmed.

All concur.