**Mary Ann EISSLER, Appellant,**

v.

**William M. LONDOFF, P.C., Respondent.**

**No. 48015.**

Missouri Court of Appeals, Eastern District, Division Three.

July 31, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 18, 1984.

Mark I. Bronson, St. Louis, for appellant.

Charles E. Foehner, III, St. Louis, for respondent.

REINHARD, Judge.

Plaintiff filed suit against her landlord for personal injuries arising out of a fall that occurred in her apartment. The jury returned a verdict in favor of defendant upon which judgment was rendered. Plaintiff appeals, citing as errors that improper foundation was layed for impeachment of plaintiff's witnesses and juror misconduct. We reverse and remand for a new trial.

In the winter of 1979, the rear porch of plaintiff's apartment was repaired. During the construction, as a safety precaution, the rear door to plaintiff's apartment was nailed shut. When the work was completed, the door was reopened. According to plaintiff, several nails were left protruding in the lower portion of the screen door. On July 17, 1979, as plaintiff was walking into her apartment through the back door, she claimed she caught her slipper on a nail in the screen door and fell breaking her hip.

After plaintiff fell, she lay on the kitchen floor unable to move. She remained there until she was found by a friend, Delores Merlo. Merlo contacted plaintiff's daughter, Marlene Burge, who immediately went to her mother's apartment. Paramedics were called and plaintiff was transported to the hospital by ambulance. Plaintiff was hospitalized until August for treatment of injuries sustained in the fall. She is now confined to a wheelchair. Plaintiff had previously had a total knee replacement in 1976, and had been confined to a wheelchair during most of 1976 and 1977. According to plaintiff, during the two or three months before the fall, she was able to quit using the wheelchair and was able to move around with the aid of a walker and two canes.

Defense counsel hired an investigator, Hank Frederick, to obtain statements from Delores Merlo and Marlene Burge. He contacted both women by phone. The conversations were recorded without the knowledge of either woman. Although neither woman was an eye witness to the fall, both women made statements to Frederick describing the incident.

At trial Merlo and Burge were called as witnesses for the plaintiff. In substance, their testimony was that plaintiff was walking through the doorway when she

tripped over nails that were protruding through the lower portion of the back door. They both also testified that plaintiff was able to walk at the time of the accident and had not been using her wheelchair for several months.

In cross-examination of Delores Merlo, defendant's attorney asked her if she had given a recorded statement over the phone to Hank Frederick on August 22, 1980. She denied doing so. Defendant's attorney then continued his questioning by asking Delores if she had made specific statements which were on the tape, all of which she denied.

In cross-examination of Marlene Burge, the following occurred:

Q. Do you remember giving a statement over the phone which was recorded on August 22nd of 1980?

A. I sure don't. I'm sorry. If I did, I don't remember it.

Q. Do you deny giving one?

A. If I—I know I said I don't remember giving a statement over the telephone.

She was then asked by defense counsel if she made specific statements that were on the recording of the conversation.

Q. Do you remember telling anyone that your mom fell out of her wheelchair?

A. If I would have said that, like that, —I might have said if somebody said "what happened to your mom", I might have said in a joking way, "oh, my mom fell out of her wheelchair", in a joking or jest, something like that. I would not have said it in a mean way.

Q. Did you ever tell anyone that she can get in and out of her wheelchair, her right leg is stiff but she can walk sometimes and sometimes she can't? Did you ever tell anybody that?

A. There was times before, like I said, and she had moments but then I said the last four months she was really doing good, like I said, and before I think she was just picking up and just carrying on to get a job. I mean, I just think she was really encouraged.

Q. Did you ever tell anyone that her footie got caught in a nail which stuck straight up from the floor?

A. I could have, yes; uh-huh.

Defendant thereafter, over plaintiff's objection, introduced the taped conversations into evidence to impeach the two women. In the taped conversations, Delores Merlo stated that plaintiff had tripped over nails in the threshold of the doorway as she entered her apartment and that she used a wheelchair around the time of the accident. Marlene Burge stated that the accident occurred when plaintiff caught her foot in a nail and fell out of her wheelchair. Portions of her statement are ambiguous and could be interpreted as meaning her mother's fall was caused by protruding nails in the threshold.

■ On appeal, plaintiff contends that the foundation was insufficient to allow introduction of the tapes. It is well settled that a non-party witness may be impeached by showing he previously made a statement inconsistent with a material statement in his trial testimony. If the witness admits making the prior inconsistent statement, he stands impeached and the matter is closed. But, if the witness denies or equivocates about having made the statement, the cross-examiner may then introduce evidence showing that the witness did make the previous inconsistent statement. Prior to the admission of the prior inconsistent statement, the witness must be given a chance to refresh his recollection of the previous statement and to admit, deny or explain it. *Aboussie v. McBrown*, 421 S.W.2d 805, 807 (Mo.App.1967). To properly lay a foundation for impeachment, it is necessary to ask the witness whether he made the statement, quoting it and pointing out the precise circumstances under which it was supposedly made, including the person to whom the prior statement was made and to the time, place, and circumstances of the prior statement. *State v. Graves*, 588 S.W.2d 495, 498–499 (Mo. banc 1979); *State v. Bennett*, 87 S.W.2d 159, 162 (Mo.1935).

The sufficiency of a foundation for the admission of a prior inconsistent statement is within the sound discretion of the trial court. On review, we must determine whether an abuse of discretion has occurred. Absent abuse, the ruling of the trial court will be upheld. *State ex rel. State Highway Commission v. Blue Ridge Baptist Temple, Inc.*, 597 S.W.2d 236, 240 (Mo.App.1980).

Using these standards, we have concluded that the foundation laid for Delores Merlo is marginally sufficient. The first three questions asked by defense counsel identified the time (August 22, 1980), place and circumstances (over the phone), and to whom the statement was made (Frederick). The continued questioning by defense counsel specifically identified statements made by Merlo inconsistent with her testimony at trial.

However, we find that defendant's attorney failed to lay a proper foundation for impeaching Marlene Burge. Defendant's attorney failed to adequately establish the circumstances surrounding the making of the statement. He failed to identify Frederick as the person to whom the statement was made. Moreover, his description of the circumstances was inherently misleading because he described the statement as recorded when Marlene Burge had no knowledge at any time that the conversation was being recorded. These inadequacies are not cured by defense counsel's subsequent questions asking her if she had ever made specific statements to anyone. Asking generally if the witness ever made a statement does not lay an adequate foundation because it does not accurately identify the circumstances in which it was made. Here, Marlene Burge was not afforded an opportunity to admit or rebut her statement to Frederick as her conversation with him was not sufficiently identified at trial. The tape recording clearly prejudiced plaintiff's case and consequently we find that the trial court abused its discretion in allowing Marlene Burge to be impeached by the tape recording.

As to the plaintiff's remaining allegation of juror misconduct, it is unnecessary to address this point of error as this will not be an issue in a new trial.

Reversed and remanded for a new trial.

KAROHL, P.J., and CRANDALL, J., concur.