**Martha Jewell HILDEBRAND,
Plaintiff–Respondent,**

v.

**Barbara Jean BALLARD,
Defendant–Appellant.**

**No. WD 40163.**

Missouri Court of Appeals,
Western District.

Feb. 14, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
March 28, 1989.

Don B. Roberson, Kansas City, for defendant-appellant.

James L. Sanders and Norman I. Reichel, Kansas City, for plaintiff-respondent.

Before SHANGLER, P.J., and CLARK and NUGENT, JJ.

NUGENT, Judge.

Defendant Barbara Jean Ballard appeals from the trial court's judgment entered on a $20,000 jury verdict for breach of contract and from the trial court's order directing a verdict against her on her counter-claim in quantum meruit for services rendered to plaintiff Martha Jewell Hildebrand. Mrs. Hildebrand cross-appeals from the trial court's refusal to submit the issue of punitive damages on her claim for conversion of two certificates of deposit (CD's). In a decision from which neither party appeals the court entered judgment for the plaintiff for $38,000 in actual damages on the conversion claim.

We affirm the decision of the trial court with respect to all points of error that the defendant raises and dismiss the plaintiff's cross-appeal.

Plaintiff Hildebrand married defendant Ballard's father, Ed Hildebrand, in 1971. He died in 1980. Before Mr. Hildebrand died, Mrs. Ballard agreed that, upon the death of either of the Hildebrands, the survivor should live with her. After his death, as the surviving joint tenant Mrs. Hildebrand sold the couple's house and moved to Kansas City to live with the defendant and her husband. The proceeds of the sale provided the funds for two certificates of deposit: one for $20,000 and one for $18,000.

Mrs. Ballard testified that she expected no compensation for providing Mrs. Hildebrand with living quarters. Mrs. Hildebrand placed Mrs. Ballard's name on the CDs and on her other accounts creating joint tenancies with a right of survivorship. Mrs. Ballard admitted that her name appeared on the accounts for the plaintiff's convenience; if Mrs. Hildebrand became incapacitated in any way, the defendant would have access to the funds. Mrs. Ballard did not condition her acceptance of the plaintiff in her home on the ownership of the CDs. She would have allowed her stepmother to live with her even if she had been penniless.

The defendant also testified, however, to her understanding that her father's estate was to have been distributed three ways. She, her sister, and Mrs. Hildebrand were each to receive one-third, but nothing in the evidence indicated that her father had left a will expressing that intent. She further testified that, although Mrs. Hildebrand had caused her to be named as joint tenant

with right of survivorship on Mrs. Hildebrand's CDs and bank accounts, defendant had agreed to an equal four-way distribution of the proceeds. She, her sister, and Mrs. Hildebrand's nephew and niece would each receive one-fourth. She considered this plan part of the initial agreement about bringing the survivor of her father and the plaintiff into her home.

Mrs. Hildebrand lived with defendant Ballard for six years. During her stay, the Ballards made various improvements in her living quarters, and she contributed funds toward the cost of those improvements, although she never paid rent. In 1986, following a cooling of her relationship with the defendant, Mrs. Hildebrand moved to Carrollton, Missouri.

Before the move, Mrs. Hildebrand transferred some accounts on which Mrs. Ballard's name had appeared to Carrollton, removing Mrs. Ballard's name. After learning of this, defendant Ballard changed the names on the $18,000 and the $20,000 CDs to her name and her husband's name. She testified that she did so to prevent dissipation of the funds and that she continued to pay the interest on those funds to the plaintiff. She understood that the funds were to be used only for the plaintiff's personal needs, but she also believed that she had a responsibility to protect the funds. She testified that she planned to distribute the proceeds of the CDs according to Mrs. Hildebrand's wishes should she survive the plaintiff. Mrs. Ballard admitted that she had contributed no money to the principal of the CDs and that she had refused Mrs. Hildebrand's demand to return them.

Steve Brown, Mrs. Hildebrand's nephew by marriage, testified that he had advised Mrs. Hildebrand to have the title to her assets placed jointly in her name and her executor's name, rather than jointly with Mrs. Ballard. Before Mrs. Hildebrand moved she discussed with him her growing dissatisfaction with her living arrangements. On the day that the movers removed Mrs. Hildebrand's belongings from the Ballard's home, Mr. Brown traveled to Kansas City to observe the move. While he was at the Ballard's, he spoke by phone with Mrs. Hildebrand's nephew, William Burton, but he did not disclose the content of that conversation.

Defense counsel read portions of William Burton's deposition into the record. That testimony revealed that Mrs. Hildebrand had given Mr. Burton a power of attorney shortly before she left the Ballard's. His name also appeared on all of her accounts except the two CDs retained by Mrs. Ballard. He denied having spent any of the plaintiff's money or having told Mr. Brown that he had. He also denied having advised Mr. Brown to tell the defendant that he would have her arrested for failing to return the CDs.

During her direct examination, to show the reason for her concern about the dissipation of Mrs. Hildebrand's funds, Mrs. Ballard identified a transcript of a tape recording of a telephone conversation between Mr. Brown and Mr. Burton recorded on the day of the move. After the court refused to admit the transcript into evidence, the defendant made an offer of proof that the transcript would reveal that Mr. Burton had stated that he spent all of the plaintiff's money and that he advised Mr. Brown to inform the Ballards that he might have them arrested for taking the CDs.

Mrs. Hildebrand testified that Mr. Ballard approached her about investing $20,000 in real estate. She declined the offer, but later agreed to lend the Ballards $20,000 to apply toward the mortgage on their business. They paid her interest at the bank rate on that amount. Mrs. Hildebrand reported the interest as income on her tax return and Mrs. Ballard deducted the interest payments from her income. Mrs. Hildebrand testified that she expected the $20,000 to be repaid, and that she had asked for a note on the debt. Mrs. Ballard denied that any such request had occurred. She explained that the $20,000 was a gift, given on the condition that the Ballards pay Mrs. Hildebrand interest on the money during her lifetime.

The court instructed the jury on this issue as follows:

Your verdict must be for plaintiff, Martha Jewell Hildebrand, if you believe:

First, Martha Jewell Hildebrand and Barbara Ballard entered into an agreement whereby Martha Jewell Hildebrand agreed to loan Barbara Ballard Twenty Thousand Dollars ($20,000.00) and Barbara Ballard agreed to repay the loan; and,

Second, Martha Jewell Hildebrand performed her agreement by loaning the Twenty Thousand Dollars ($20,000.00); and,

Third, Barbara Ballard failed to perform her agreement by failing to repay the Twenty Thousand Dollars ($20,-000.00); and,

Fourth, Martha Jewell Hildebrand was thereby damaged.

The jury returned a verdict on that count in the plaintiff's favor for $20,000. On a separate count charging that Mrs. Ballard converted Mrs. Hildebrand's CDs, the court directed a verdict for the plaintiff for $38,-000 but refused to submit punitive damages on that issue to the jury. It also directed a verdict against Mrs. Ballard on her counterclaim for quantum meruit. This appeal followed.

In her first point of error, defendant Ballard argues that the trial court erred in submitting instruction No. 6 to the jury. She contends that the evidence did not support such an instruction or, in the alternative, that the instruction was ambiguous in that it failed to hypothesize the plaintiff's version of the agreement. We disagree.

■ To justify the giving of an instruction, the evidence must support it. *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 878 (Mo.App.1984). To find the plaintiff entitled to recover, the jury must see, hear and believe evidence that a contract existed, that it imposed an obligation on the parties to perform, that one party committed a breach of that agreement, and that the other party suffered damage as a result of the breach. *Vandever v. Junior College District of Metropolitan Kansas City*, 708 S.W.2d 711, 716 (Mo.App.1986).

■ The parties presented sufficient evidence to establish a jury question. It tended to prove that Mrs. Hildebrand transferred $20,000 after the defendant requested a loan and that she asked for a note for the loan. Although Mrs. Ballard did not respond to Mrs. Hildebrand's request for a note, she accepted the money. Both parties' tax returns reflect the interest payments made and received, further supporting the inference of a loan rather than a gift. Mrs. Ballard refused to pay the plaintiff the $20,000 when she demanded it, thus depriving plaintiff of her money to her damage.

The defendant cites *Reed Stenhouse, Inc. v. Portnoy*, 642 S.W.2d 947 (Mo.App. 1982), to support her allegation of ambiguity in instruction No. 6. In *Reed Stenhouse*, the ambiguity arose because the instruction incorporated terms from the contract, although the construction of those terms was at issue in the litigation. *Id.* at 951. Here, however, the parties' dispute does not concern the construction of the terms of the contract but its very existence. The instruction adequately submitted the plaintiff's theory of recovery. *See Vandever, supra.* We find no error in the submission of instruction No. 6.

■ The defendant also asserts that the trial court erred in excluding the transcript of the recorded telephone conversation between Steve Brown and William Burton. She proposed to establish by use of the transcript a number of contradictions between the trial testimony of plaintiff, Steve Brown and the deposition testimony of William Burton, on the one hand, and the recorded statements on the other hand. To use prior inconsistent statements for impeachment, however, the proponent must first establish a proper foundation. To lay the foundation the proponent must: ask the witness whether he made the statement; read it to him; identify the listener; and describe the time, place, and circumstances under which he allegedly made the statement. *Eissler v. Londoff*, 677 S.W.2d 358, 360 (Mo.App.1984). If the witness admits making the statement, he stands impeached, but if he denies making it he must have the opportunity to refresh his recollection and to admit, deny, or explain the statement. *Id.* The trial court must exercise its discretion to determine whether the

proponent has laid a proper foundation for admission of the prior inconsistent statement, and an appellate court will interfere with the trial court's decision only upon a finding that it abused its discretion. *Id.* at 361.

Here, counsel asked Steve Brown general questions concerning the subject matter of the recording, but never mentioned the recording to him. Counsel asked more specific questions of William Burton, but still failed to identify the source of the information. Both witnesses denied having made such statements, but neither had an opportunity to explain them. Clearly, the defendant failed to establish the proper foundation for introducing the prior inconsistent statements. The trial court properly exercised its discretion in excluding the transcript.

Defendant Ballard's final point on appeal challenges the propriety of directing a verdict against her claim for quantum meruit. She sought compensation for the value of rent and services that she provided the plaintiff. The right to recover in quantum meruit arises when services are provided and accepted under circumstances that would justify an expectation of payment of the reasonable value of those services to the person providing them. *Bennett v. Adams,* 362 S.W.2d 277, 280–81 (Mo.App. 1962).

When the plaintiff's evidence shows that she is not entitled to recover as a matter of law, the trial court may properly direct a verdict for the defendant. *Bandag of Springfield, Inc. v. Bandag Incorporated,* 662 S.W.2d 546, 550 (Mo.App.1983). Mrs. Ballard, of course, stands in the shoes of a plaintiff on her counterclaim. Her own admissions negated any inference of an expectation of payment, a necessary element for her recovery in quantum meruit. She would have allowed Mrs. Hildebrand to live with her even had she been penniless. Although Mrs. Ballard testified that she expected to remain on her stepmother's bank accounts or to receive a share of her father's estate in return for her services, that expectation did not give rise to a claim in quantum meruit. Her claim amounted to an expectation of a bounty, not to a reasonable belief that she would receive payment for the reasonable value of her services. *See Smith v. Davis' Estate,* 206 Mo.App. 446, 230 S.W. 670, 672–73 (1921). The trial court properly directed a verdict against the counterclaim.

In her cross-appeal, the plaintiff asserts error in the trial court's failure to submit punitive damages to the jury. She failed to present this allegation of error to the trial court in a motion for a new trial and, therefore, did not preserve the question. *See Johnson v. St. Mary's Health Center,* 738 S.W.2d 534, 536 (Mo.App.1987). Review of the trial court's decision is available, then, only for plain error, and we will provide relief only to prevent manifest injustice or a miscarriage of justice. *See Dixon v. Model Cities Health Corp. of Kansas City,* 651 S.W.2d 498, 499 (Mo.App. 1983). Because Mrs. Hildebrand continued to receive interest on the CDs, and because the defendant in no way dissipated the funds, we find no manifest injustice in the trial court's refusal to submit punitive damages. Therefore, we dismiss the plaintiff's appeal. We affirm the judgment of the trial court in all respects.

All concur.