**Darrell STRUTTON and Rita Strutton, Respondents,**

v.

**Arthur HUNTINGTON and Shirley Huntington, Appellants.**

**No. 17925.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 28, 1993.

James D. Sickal, Waynesville, for appellants.

Dan L. Birdsong, Charles Bennett, Thomas, Birdsong & Clayton, P.C., Rolla, for respondents.

CROW, Presiding Judge.

Plaintiffs, Darrell Strutton and Rita Strutton (husband and wife), sued Defendants, Arthur Huntington and Shirley Huntington (husband and wife), in four counts. Defendants filed a counterclaim. A nonjury trial produced judgment (a) for Defendants on Plaintiffs' Counts I, II and III, (b) for Plaintiffs on their Count IV, and

(c) for Plaintiffs on Defendants' counterclaim.

Defendants appeal. The first of their two points relied on pertains to Count IV; the second avers the trial court erred in denying the counterclaim. Plaintiffs do not appeal the denial of their Counts I, II and III. Consequently, this opinion concerns only Plaintiffs' Count IV and Defendants' counterclaim.

By Count IV, Plaintiffs pled a claim in quantum meruit[1] for materials and labor for improvements to a house owned by Defendants, referred to in the record as "House No. 2." Plaintiffs made the improvements while they occupied the house from November, 1984, to January, 1989.

The trial court found:

Plaintiffs provided materials and labor for improvements to House No. 2 under circumstances indicating that the Defendants knew or should have known that plaintiffs would expect to be reimbursed for the reasonable value of such materials and labor in the event plaintiffs vacated House No. 2.

The trial court further found (a) the materials furnished by Plaintiffs had an aggregate value of $8,986.72, (b) the reasonable value of Plaintiffs' labor was $5.00 per hour, (c) the reasonable value of Plaintiffs' labor in the aggregate was $3,990.00, and (d) Defendants paid Boatmen's Bank of Pulaski County interest and principal totaling $4,429.93 on a note for which Plaintiffs were liable, the proceeds of which had been used to pay for improvements to House No. 2.

The trial court added the amount in clause "(a)" to the amount in clause "(c)," producing a total of $12,976.72. From that sum, the trial court deducted the amount in clause "(d)," leaving a balance of $8,546.79. The trial court awarded Plaintiffs the latter amount on Count IV.[2]

In their counterclaim, Defendants alleged Plaintiffs damaged House No. 2 "and committed waste thereon" while living there or upon departure. As a result, averred Defendants, they incurred expense for repairs and cleanup, "all to [their] damage in the sum of Five Thousand Dollars."

The trial court found no facts in its adjudication of Defendants' counterclaim. The judgment simply states:

The Court finds for the Plaintiffs as to all issues plead in Defendants' Counterclaim.

Defendants' first point relied on reads:

The trial court erred in awarding [Plaintiffs] $3,990.00 for the reasonable value of labor performed for the following reasons:

1. Because of a mathematical error in addition, the total amount should be $1,995.00 and not $3,990.00 (assuming any should be allowed).

2. No expert testimony was presented as to the "reasonableness" of the amount claimed.

3. There was no evidence as to the $5.00 amount per hour found by the court.

4. [Plaintiffs] did not perform the labor with the expectation or intention of being paid and said labor was gratuitous.

Our review of this judge-tried case is governed by Rule 73.01(c),[3] as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneous-

---

1. A cause of action in quantum meruit is based on a promise implied by law that a person will pay a reasonable and just compensation for valuable services or materials provided at his request or with his approval. *Chase Electric Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 209[9] (Mo.App.1990); *McDowell v. Schuette*, 610 S.W.2d 29, 37[10] (Mo.App.1980); *Berra v. Bieg Plumbing Co., Inc.*, 584 S.W.2d 116, 118[2] (Mo.App.1979).

2. There is a seven-cent inconsistency in the judgment. On its third page there is a finding that Plaintiffs are entitled to $8,546.79 on Count IV. On the final page of the judgment, the amount awarded is $8,546.72. It appears to us the final digit in the latter amount is a typographical error and should be "9" instead of "2."

3. Rule references are to Missouri Rules of Civil Procedure (1992).

ly declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. Credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). In determining the sufficiency of the evidence, we accept as true the evidence and inferences from it favorable to the judgment, and disregard all contrary evidence. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654[2] (Mo. banc 1989).

So viewed, the evidence establishes that in 1978, Defendants owned a business, Ozark Transmission, in Pulaski County, Missouri. Defendant Arthur Huntington ("Tom"[4]) operated it. Tom hired Plaintiff Darrell Strutton to work at Ozark Transmission. Darrell is the brother of Tom's wife, Shirley. Besides salary, Tom agreed to provide a house in which Plaintiffs could reside.

At that time, Defendants owned a house, referred to in the record as "House No. 1." Darrell began working for Ozark Transmission in July, 1978, and he, Rita and their children moved into House No. 1.

Darrell remained employed at Ozark Transmission the next six years, during which Plaintiffs occupied House No. 1. About November 1, 1984, Defendants allowed Plaintiffs to move into House No. 2, which Defendants had recently bought. Pertinent to Defendants' first point, Darrell testified:

Q. ... What was your agreement about [House No. 2]?

A. If we ever split, I give [Tom] back what he had in it, or he'd give me back what I had in it.

Q. All right. Now, after you moved into it, did you discuss with him the making of improvements on the home?

A. Yes.

. . . .

Q. What was your agreement?

A. The money I had into it would go—He'd pay me back or what he had into it, I'd pay him back.

. . . .

Q. He told you that before you ever started making any improvements, did he not; that he couldn't afford to make any improvements on it?

A. I would have to make them.

. . . .

Q. You indicated that the conversation was that, if you ever split up, you would get what you had in it, and he would get what he had in it; is that correct?

A. Right.

. . . .

Q. ... What I'm getting at, "Was there any discussions about, "If we split up, I'm to get whatever money I have in it and improvements, no matter how much that might be"?

A. Right.

. . . .

Q. ... Did you ever tell Mr. or Mrs. Huntington how much money you were spending in putting into this house?

A. No. He was down there every day. He looked at it.

. . . .

Q. Now, did you ever explain to Mr. Huntington that you were going to make a charge and consider what labor you had in it as something that would have to be paid back, if you split?

A. I never—The deal was he gives me back what I had into it.

Q. And what you had into it, you considered as labor as well?

A. Well, yes.

Plaintiffs made improvements to House No. 2. Defendants knew about it. Tom co-signed *two notes* to a bank, the proceeds of which (some $6,000) were used for improvements.

Tom fired Darrell January 1, 1988. However, Plaintiffs continued to reside in House No. 2 approximately another year, during which they paid rent to Defendants. Plaintiffs then departed.

Defendants' first point, quoted *supra,* presents four claims of error. The first is

---

**4.** Mr. Huntington is called "Tom" throughout the transcript.

the trial court incorrectly calculated that Plaintiffs were entitled to $3,990 for labor. Defendants assert the correct amount is $1,995 (assuming, arguendo, any sum should be allowed for labor).

Our examination of the record confirms Defendants are right. The trial court itemized 22 improvements and found Plaintiffs were entitled to a specific dollar amount for labor for each. The correct total of those 22 individual amounts is $1,995, not $3,990 as calculated by the trial court.

Plaintiffs concede the error, and agree the judgment on Count IV should be reduced by $1,995 (the difference between $3,990 and $1,995). This reduction lowers the judgment on Count IV to $6,551.79.

■ We next consider the third claim of error in Defendants' first point. Defendants argue Plaintiffs should have been awarded nothing for labor because there "was no evidence as to the $5.00 amount per hour found by the court."

At trial, Darrell claimed eight dollars per hour for his labor. Questioning of Darrell by Defendants' lawyer produced this dialogue:

Q. ... How did you arrive at $8 an hour?

A. Called up some carpenters and asked them what they charge, and it was about double that.

Q. Were you an experienced carpenter?

A. No. ... I'm pretty fair.

....

Q. And you think $8 an hour is reasonable for what you spent on—with no more experience than that and working on the house?

A. Yes.

■ In a quantum meruit claim, where the person seeking compensation for a service is an expert with respect to that type service, he may express an opinion at trial on the reasonable value of the service performed. *Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605, 607[3] (Mo. banc 1981), physician's testimony established reasonable value of treatment for bone fracture; *Williams Carver Co. v. Poos Bros., Inc.*, 778 S.W.2d 684, 687[8–10] (Mo. App.1989), testimony of president of refrigeration company established his expertise in type of work performed by company, hence his opinion on reasonable value of work was sufficient to support recovery; *Baron v. Lerman*, 719 S.W.2d 72, 77–78[5] (Mo.App.1986), accountant qualified to provide expert testimony on value of his accounting and tax services.

Here, Defendants' lawyer, by his questioning of Darrell, adduced testimony that local carpenters charged about sixteen dollars per hour. While Darrell did not declare himself an "experienced carpenter," he opined he was "pretty fair" and eight dollars per hour was reasonable for his work. This evidence, elicited by Defendants, obviously came in without objection by them. Understandably, Plaintiffs did not object.

■ Relevant evidence received without objection may properly be considered, although it would have been excluded on proper objection. *Appelhans v. Goldman*, 349 S.W.2d 204, 207[5] (Mo.1961). Its probative worth and effect are for the trier of fact. *In re J.L.L.*, 402 S.W.2d 629, 633–34[1] (Mo.App.1966); *Fellows v. Farmer*, 379 S.W.2d 842, 846[2] (Mo.App.1964).

Arguably, Darrell, as a self-declared "pretty fair" carpenter, was qualified to express an opinion that the reasonable value of his carpenter work was eight dollars per hour. However, his expertise—or lack thereof—need not be considered inasmuch as his opinion on the reasonable value of his work came in without objection and was thus in the case for whatever weight the trial court chose to give it.

As we fathom Plaintiffs' evidence, all the labor for which they sought compensation in Count IV was performed by Darrell. The trial court, as we have seen, found the reasonable value of the labor was five dollars per hour. As that was lower than the only evidence on the subject, Defendants have no basis for complaint. The third claim of error in their first point is without merit.

■ The second hypothesis of error in Defendants' first point is that no expert testimony was presented as to the reasonableness of the amount claimed by Plaintiffs for labor.

As observed above, Darrell's opinion that eight dollars per hour was reasonable for his work arguably constituted expert testimony on the subject. Whether he was indeed qualified to present expert testimony need not be decided.

In *Beardsley v. Beardsley*, 819 S.W.2d 400 (Mo.App.1991), the Western District of this Court held that in a quantum meruit case where the value of the services is a matter of common knowledge, the trier of fact can determine their value from its own knowledge, without aid of expert opinion. *Id.* at 404[6]. *Accord: Malecek v. Estate of Enger*, 616 S.W.2d 137, 138 (Mo.App. 1981). Thus, in *Beardsley*, the trial court did not need expert testimony to determine the reasonable value of replacing a fence, putting up sheetrock, painting, or installing insulation, as these chores were within the common knowledge of the trial court. 819 S.W.2d at 403–04.

*Beardsley* did recognize that where the services consist of sophisticated electrical, plumbing and other tasks, expert testimony is necessary to enable the trier of fact to determine their reasonable value. *Id.* at 403.

Here, most of the 22 improvements for which the trial court awarded Plaintiffs compensation for labor appear to involve the kind of work for which, according to *Beardsley*, expert testimony is unnecessary. Defendants do not single out any improvement which, under *Beardsley*, would require expert testimony for a determination of the reasonable value of the labor. The third claim of error in Defendants' first point is denied.

■ The final allegation of error in Defendants' first point is that Plaintiffs were entitled to nothing for labor because they did not perform it with the expectation or intention of being paid and "said labor was gratuitous." In support of this contention, Defendants refer us to the following passage from Darrell's testimony:

Q. You didn't keep any records of your time of the labor; did you—

A. No.

Q. —when you were doing the work?

A. No.

Q. And isn't the reason that you didn't put any time down when you were doing the work is because you didn't intend to make a charge or to account for the amount of time; isn't that a fair statement?

A. Pretty fair. I didn't know I was going to get treated this way. Put it that a'way.

Q. ... I'm simply asking, at the time you were doing this work, you didn't intend to charge Mr. Huntington for that work as part of the improvements you were putting on the house; did you?

A. I didn't intend to charge it for nothing because I figured I'd be there forever.

. . . .

Q. ... you didn't keep any [record] on the labor; is that correct?

A. No.

Q. And isn't the reason you didn't is because you—at the time you were doing it, didn't intend to make a charge for your time?

A. Probably so, at the time.

Citing *Hildebrand v. Ballard*, 767 S.W.2d 62, 66[5] (Mo.App.1989), Defendants assert expectation of payment is an element of a quantum meruit claim and Darrell's testimony refutes that expectation.

After the colloquy quoted above, Darrell's testimony continued:

Q. ... at the time you did the work, ... you didn't do it with the intention of charging Mr. Huntington or anyone else for it; isn't that a fair statement?

A. I was doing it for me because I thought ... I'd end up with the house.

Q. I see. You thought you would end up with House No. 2?

A. Yes.

Q. How did you figure that?

A. Because that was the agreement.

Q. That you were going to get the house?

A. As long as I give him his money back.

Q. Did you ever give him his money back?

A. He wouldn't take it.

Darrell's understanding of the agreement to which he refers in the above passage appears in the first segment of his testimony quoted earlier in this opinion. There, it will be recalled, he testified that if he and Tom ever "split," he (Darrell) would give Tom back what he (Tom) had in House No. 2, or Tom would give Darrell back what he (Darrell) had in House No. 2. That is, under the first option Plaintiffs could keep House No. 2 upon paying Defendants what Defendants "had in it."

Tom swore there was no such agreement, and the trial court so found. However, as we learned earlier, the trial court found Plaintiffs performed labor for improvements to House No. 2 under circumstances indicating Defendants knew or should have known that Plaintiffs would expect reimbursement for the reasonable value of such labor if Plaintiffs vacated House No. 2. The trial court's award in quantum meruit on Count IV is consistent with a finding that Plaintiffs believed if Tom fired Darrell and Plaintiffs had to leave House No. 2, Defendants would "give [Plaintiffs] back what [they] had in it." As reported earlier, Darrell testified he considered "what [he] had into it" included his labor.

In a judge-tried case, all fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached. Rule 73.-01(a)(2); *Long v. Zirkle*, 811 S.W.2d 840, 844[6] (Mo.App.1991); *Stancil v. Fair*, 811 S.W.2d 503, 504[3] (Mo.App.1991). Darrell's testimony, in its entirety, is sufficient to support the finding in the second sentence of the preceding paragraph (which the trial court explicitly made) and also sufficient to support the finding in the third sentence of the preceding paragraph (which the trial court implicitly made). The

final claim of error in Defendants' first point is denied.

Their second point relied on reads:

The trial court erred in finding for [Plaintiffs] on [Defendants'] counterclaim, or in the alternative, a setoff because such finding was against the weight of the evidence.

Rule 84.04(d) reads, in pertinent part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

The purpose of the rule and the necessity of obeying it are fully discussed in the leading case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Point II furnishes no clue as to wherein and why the finding on Defendants' counterclaim was against the weight of the evidence. It therefore presents nothing for review. *Roberts v. Johnson*, 836 S.W.2d 522, 524[9] (Mo.App.1992); *Looney v. Looney*, 771 S.W.2d 377, 378 (Mo.App.1989); *Best v. Culhane*, 677 S.W.2d 390, 394[4] (Mo.App.1984); *Matter of Roth*, 603 S.W.2d 70, 71[1] (Mo.App.1980).

Furthermore, a contention that a judgment is against the weight of the evidence implies there is some evidence to support it and refers to a matter which is essentially for the trial court. *Shell–Con, Inc. v. Architectural Concrete, Inc.*, 486 S.W.2d 662, 663–64[2] (Mo.App.1972).

The burden of proof was on Defendants with respect to their counterclaim. *Minnesota Mining & Manufacturing Co. v. Williamson*, 675 S.W.2d 951, 953[3] (Mo.App. 1984); *Wisdom v. Rollins*, 664 S.W.2d 37, 39[2] (Mo.App.1984). The trial court was not compelled to believe Defendants' evidence on the counterclaim. *Herbert*, 757 S.W.2d at 587[1]. We do not substitute our judgment for that of the trial court on credibility issues. *Strauss v. Strauss*, 755 S.W.2d 742, 743[1] (Mo.App.1988); *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65[5] (Mo.App.1987). Consequently, even if Defendants' second point were eligible for review, it would be futile.

The portion of the judgment awarding Plaintiffs $8,546.79 is corrected by reducing the award to $6,551.79. In all other respects the judgment is affirmed. Costs of this appeal are taxed half against Plaintiffs and half against Defendants.

PARRISH, C.J., and SHRUM, J., concur.