**Boyd H. MCGATHEY and Debra A. Augustine, Respondents,**

v.

**Matthew C. DAVIS, Appellant.**

**No. WD 69031.**

Missouri Court of Appeals, Western District.

Feb. 27, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2009.

Patrick W. Peters, Kansas City, MO, for appellant.

Christopher Sweeney, Kansas City, MO, for respondent.

Before LISA HARDWICK, P.J., VICTOR HOWARD and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, Judge.

This appeal arises from the trial court's judgment in favor of Boyd McGathey and Debra Augustine in a case against Matthew Davis for interference with their right of sepulcher and burial of their daughter, Amber McGathey. Upon review, we find no error and affirm the judgment.

## Facts

Matthew Davis met Amber McGathey in March of 2004 at a Narcotics Anonymous meeting. They were both drug-free at the time, and they became friends and started dating. In May of 2004, Ms. McGathey and Mr. Davis began using drugs again. After several days of drug use, Ms. McGathey traveled to Florida to check into an in-patient treatment facility.

Ms. McGathey left the facility before completing the treatment program and returned to Missouri. On June 1, 2004, after using drugs, Mr. Davis returned to his apartment around 11:30 p.m. and found Ms. McGathey on the couch. He thought she was sleeping. Mr. Davis went to his bedroom, and around 4:30 a.m., he returned to the living room to speak with Ms. McGathey, only to find her dead. Mr. Davis unsuccessfully attempted to contact his attorney.

On June 2, 2004, at approximately 10:30 p.m., Mr. Davis wrapped Ms. McGathey's body in a mattress cover, secured it with duct tape and speaker wire, and placed the body in his vehicle. Mr. Davis continued trying to contact his attorney.

On June 5, 2004, Mr. Davis finally met with his attorney, who advised Mr. Davis that the proper course of action would be to contact the police. After meeting with

his attorney, Mr. Davis returned to his apartment. Mr. Davis's attorney then notified police of the body in Mr. Davis's vehicle and the vehicle's location. The police arrived at Mr. Davis's apartment complex and surrounded Mr. Davis's vehicle, but they did not come to Mr. Davis's apartment. From his apartment window, Mr. Davis observed police in the parking lot—he did not want to meet the police in the parking lot. Mr. Davis called 911, and the police then came to his apartment.

On June 6, 2004, police informed Boyd McGathey that his daughter, Ms. McGathey, was dead. Mr. McGathey asked to see his daughter's body but was told that it was badly decomposed, swollen, and black. The same day, Mr. McGathey informed Debra Augustine, Ms. McGathey's mother, that their daughter was found dead. Mr. McGathey told Ms. Augustine that Ms. McGathey's body was found in a vehicle, wrapped in a sheet, duct tape, and speaker wire, and was badly decomposed.

Ms. McGathey's funeral services were closed casket. Ms. Augustine wanted her daughter to be buried in a nightgown and family ring, but Mr. McGathey and Ms. Augustine were told by the mortician that Ms. McGathey's body was too bloated to wear a ring or clothing. Mr. McGathey and Ms. Augustine never viewed their daughter's body.

Mr. Davis pleaded guilty to the criminal charge of abandonment of a corpse.

■ Mr. McGathey and Ms. Augustine brought suit against Mr. Davis alleging, *inter alia,* interference with the right of sepulcher and burial.[1] After a jury trial on September 10, 2007, judgment was entered in favor of Mr. McGathey and Ms. Augustine. The jury awarded $250,000

each to Mr. McGathey and Ms. Augustine for compensatory damages.

This appeal followed.

**Discussion**

■ On the eve of oral arguments of the case *sub judice,* Mr. Davis's criminal conviction was overturned, and his guilty plea was set aside. On the morning of oral argument, Mr. Davis filed a Motion to Allow Briefing on Additional Point to Avoid Compounding A Fraud Upon the Court. We deny Mr. Davis's request for briefing, but we will address the issue set forth in his motion before discussing the points raised by Mr. Davis in his appeal.

■ The fact that Mr. Davis's guilty plea was set aside by the trial judge in his criminal case on the eve of oral argument in this case is of no procedural relevance. The only matters properly before this court are claims of error in the case *sub judice.* Mr. Davis claims that the trial court erred in denying his request for a continuance in this case. The trial court's denial of Mr. Davis's request for continuance, however, was not brought before this court as a claim of error. "When an issue is presented and decided by the trial court, an appellant abandons any claim of error as to an issue not raised in its points relied on in its appellant's brief." *Kabir v. Mo. Dep't of Soc. Servs.,* 845 S.W.2d 102, 102–03 (Mo.App. W.D.1993). By failing to raise any issue concerning the denial of his request for continuance in his appeal, Mr. Davis has abandoned any claim of error on that issue. *See id.*

■ Mr. Davis asserts that he was prejudiced because the jury was aware that he pleaded guilty to abandonment of a corpse. However, even though his plea of guilty

---

1. The common law right of sepulcher is "the right of the next of kin to perform a ceremonious and decent burial of the nearest relative— and an action for the breach of that right." *Galvin v. McGilley Mem'l Chapels,* 746 S.W.2d 588, 591 (Mo.App. W.D.1987).

has now been set aside, there was nothing misleading or untrue about what the jury heard. The relevant facts of this case were never in dispute, and Mr. Davis himself testified specifically as to what he did with Ms. McGathey's body. The fact that Mr. Davis pleaded guilty in the criminal case was a collateral matter to Mr. McGathey's and Ms. Augustine's case for violation of their right of sepulcher and burial. The setting aside of Mr. Davis's plea cannot now serve as a basis to overturn the jury verdict and reverse the judgment of the trial court.[2]

## Point I

■ In his first point on appeal, Mr. Davis claims that Mr. McGathey's and Ms. Augustine's petition for interference with the right of sepulcher and burial failed to state a cause of action because Mr. Davis did not owe a duty of care to Mr. McGathey, Ms. Augustine, or Ms. McGathey. Mr. Davis argues that the trial court erred in failing to direct a verdict for him, because there was no evidence presented at trial to support a duty of care.

In reviewing the trial court's denial of Mr. Davis's motion for directed verdict, we must determine whether Mr. McGathey and Ms. Augustine made a submissible case. *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 38 (Mo. App. W.D.2002). To make this determination, "we review the evidence and all reasonable inferences in the light most favorable to the jury's verdict and disregard contrary evidence." *Id.* "We will reverse judgment on the basis that insufficient evidence supported the jury's verdict 'only where there is a complete absence of probative fact to support the jury's conclusion.'" *Id.* at 39 (quoting *Giddens v. Kan-*

*sas City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000)). We will not disturb the jury's verdict when reasonable minds can differ as to a question put to the jury. *Id.*

■ Mr. Davis contends that he had no duty of care toward Mr. McGathey, Ms. Augustine, or the body of Ms. McGathey. He argues that because he had no duty, Mr. McGathey's and Ms. Augustine's Petition for Interference with the Right of Sepulcher and Burial failed to state a cause of action. The problem with Mr. Davis's analysis, however, is that Missouri has long recognized a duty of every person not to interfere with the right of sepulcher:

> There is a duty imposed by the universal feelings of mankind to be discharged by some one towards the dead; a duty, and we may also say a right, to protect from violation; and a duty on the part of others to abstain from violation ... and it would be discreditable to any system of law not to provide a remedy in such a case.

*Moloney v. Boatmen's Bank*, 288 Mo. 435, 232 S.W. 133, 139 (1921)(quotation marks and citation omitted). Mr. McGathey and Ms. Augustine sought to exercise this right of sepulcher by controlling their daughter's burial and assuming the duty of properly caring for Ms. McGathey's body. *State v. Bratina*, 73 S.W.3d 625, 627 (Mo. banc 2002). In their petition, Mr. McGathey and Ms. Augustine asserted that Mr. Davis "took custody of Amber McGathey's body" and "wrapped it in a sheet and secured it with duct tape and speaker wire and put it in the back of a vehicle." The petition further alleged that Mr. Davis "intentionally interfered with and violated the rights of [Mr. McGathey and Ms. Augustine] to the burial of their daughter." Mr.

2. We note that the withheld law enforcement investigative records, which formed the basis of the setting aside of Mr. Davis's guilty plea, were available to Mr. Davis in connection with his defense of this civil case.

McGathey and Ms. Augustine were clearly asserting their right of sepulcher.

■ Although Mr. McGathey and Ms. Augustine did not use the word "duty" in their petition, they did state facts sufficient to establish a legal duty. "If a party pleads facts sufficient to establish a legal duty, it is not necessary to plead using the word 'duty.'" *Henson v. Greyhound Lines, Inc.*, 257 S.W.3d 627, 629 (Mo.App. W.D.2008). The facts alleged by Mr. McGathey and Ms. Augustine in their petition sufficiently establish a legal duty, and that is all that is required. The trial court did not err in denying Mr. Davis's motion for directed verdict.

Point One is denied.

### Point II

■ In his second point on appeal, Mr. Davis claims the trial court erred in failing to grant his motion to set aside the verdict because any duty he owed to Mr. McGathey or Ms. Augustine violates his Fifth Amendment right against self-incrimination. Mr. Davis contends that by failing to notify law enforcement, Mr. McGathey, or Ms. Augustine about Ms. McGathey's body, he was exercising his Fifth Amendment right.

■ The constitutionality of a statute is a question of law to be reviewed *de novo*. *Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 7 (Mo. banc 2008). However, when reviewing the denial of a motion to set aside the verdict, this court must determine whether there was sufficient evidence to support the jury's verdict. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456 (Mo. banc 2006). Mr. Davis argues that Section 194.425, RSMo 2000, which compels a person to report a corpse to law enforcement officials, is unconstitutional insofar as it interferes with a person's right against self-incrimination. The statute states that "[a] person commits the crime of abandonment of a corpse if that person abandons, disposes, deserts or leaves a corpse without properly reporting the location of the body to the proper law enforcement officials in that county." § 194.425. Mr. Davis argues that by not informing law enforcement of Ms. McGathey's body, he was asserting his constitutional right against self-incrimination. Mr. Davis contends that requiring him to report the finding of Ms. McGathey's body would have placed him in a "Catch–22," [3] because law enforcement officials would have found evidence of drug use in his residence when they responded to his call. Mr. Davis's argument fails. He argues on appeal that Section 194.425 is unconstitutional, but he waived this argument by not raising the alleged unconstitutionality of the law at the earliest opportunity. "An attack on the constitutionality of a statute is of such dignity and importance that the record touching such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal." *Hollis v. Blevins*, 926 S.W.2d 683, 684 (Mo. banc 1996)(quotation marks and citation omitted). Moreover, the judgment against Mr.

---

**3.** In his appellate brief, Mr. Davis's counsel provides this definition of a "Catch–22:"

"Catch–22" is a term coined by Joseph Heller in his novel *Catch–22*, and describes a situation in which multiple probable events exist, and the desirable outcome purports to result from these events, but there is zero probability of the desired event happening because the events are mutually exclusive.

In the novel, bombardier Yossarian wants to be excused from combat duty because he is insane. In order to be excused, the flight surgeon must submit a diagnosis of insanity. However, a flight surgeon cannot issue such a diagnosis because, by definition, an insane person would not believe or suspect that they were insane.

Davis in the case *sub judice* was not for his failure to inform law enforcement of the location of Ms. McGathey's body. The judgment against Mr. Davis was for the manner in which he disposed of her body, which is not addressed in Section 194.425.

Point Two is denied.

## Point III

■ In his third point on appeal, Mr. Davis argues that the trial court erred in preventing Mr. Davis from calling the Jackson County, Missouri, Medical Examiner to testify about Ms. McGathey's autopsy and opinions concerning the manner of death, condition of the body at the time of autopsy, and the natural process of decomposition. Mr. Davis asserts the medical examiner would have provided scientific, technical, and specialized knowledge that would have assisted the jury and that the trial court's refusal to allow such testimony deprived the jury of relevant and material facts concerning the manner and cause of death as well as the condition of Ms. McGathey's body.

■ On appeal, we review the trial court's decision to admit or deny expert testimony for an abuse of discretion. *Keyser v. Keyser,* 81 S.W.3d 164, 169 (Mo.App. W.D.2002). A court " 'abuses its discretion when its ruling is clearly against the logic of the circumstances then before the [circuit] court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Collins v. Hertenstein,* 90 S.W.3d 87, 99 (Mo.App. W.D.2002)(quoting *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991)). "The trial court does not usually commit reversible error by mere exclusion of expert testimony . . . ." *Inman v. Bi–State Dev. Agency,* 849 S.W.2d 681, 683 (Mo.App. E.D.1993).

■ Mr. Davis argues in his brief that the medical examiner would have testified that the manner in which Ms. McGathey's body was found—moved from one location to another—is not unusual in cases of accidental drug overdose. That testimony, however, would not tend to prove or disprove any fact necessary for determination of the issue before the jury, which was whether Mr. Davis interfered with Mr. McGathey's and Ms. Augustine's right of sepulcher and burial of their daughter. Mr. Davis has failed to show how the medical examiner's testimony would have had any relevance to any issue in the case before the jury. "A trial court does not abuse its discretion when it excludes irrelevant evidence." *Mehrer v. Diagnostic Imaging Ctr., P.C.,* 157 S.W.3d 315, 320 (Mo.App. W.D.2005).

Point Three is denied.

## Point IV

■ In his fourth point on appeal, Mr. Davis asserts that the trial court erred in admitting photographs of Ms. McGathey's body because the injuries suffered by Mr. McGathey and Ms. Augustine were limited to what they had been told about their daughter's body. He contends that because Mr. McGathey and Ms. Augustine never saw their daughter's body, the photographs shown to the jury of the body were irrelevant and prejudicial.

The photographs to which Mr. Davis refers, however, are not a part of the record on appeal and thus cannot be considered. "The record on appeal *shall* contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented . . . to the appellate court for decision." Rule 81.12(a)(emphasis added).

Point Four is denied.

### Point V

In his final point on appeal, Mr. Davis contends that the trial court erred in not granting remittitur. He argues that the jury's verdict of $250,000 each to Mr. McGathey and Ms. Augustine was excessive under the evidence and/or was due to trial court error.

"The trial court is given broad discretion in deciding whether remittitur should be ordered." *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 448 (Mo. banc 1998). "The appellate court will interfere only when the verdict is so excessive it shocks the conscience of the court and convinces the appellate court that both the jury and the trial court abused its discretion." *Id.* "In reviewing whether a verdict is excessive, we are limited to a consideration of the evidence which supports the verdict excluding that which disaffirms it." *Graham v. County Med. Equip. Co.*, 24 S.W.3d 145, 148 (Mo.App. E.D.2000).

The jury is given a large amount of deference in determining a party's injuries. *See id.* In the case *sub judice*, neither Mr. McGathey nor Ms. Augustine were allowed to view their daughter's body before she was buried. As discussed supra, Mr. McGathey and Ms. Augustine were told that their daughter's body was badly decomposed and, among other conditions, too swollen to wear a ring or clothing for her burial. The jury heard testimony from both Mr. McGathey and Ms. Augustine about the mental anguish and suffering caused by the circumstances surrounding their daughter's death and burial. The trial court and jury were in the best position to assess the credibility of and the damages suffered by Mr. McGathey and Ms. Augustine. *Id.* The jury considered all of the evidence, and it awarded Mr. McGathey and Ms. Augustine $250,000 each. "There is a large range between the damage extremes of inadequacy and excessiveness, and we will allow a jury virtually unfettered discretion if the damages are within that range." *Id.* In light of the evidence presented at trial, the jury's award does not shock the conscience, and the trial court did not abuse its discretion in denying Mr. Davis's request for remittitur.

Point Five is denied.

### Conclusion

For the foregoing reasons, the judgment in favor of Mr. McGathey and Ms. Augustine for interference with their right of sepulcher and burial is affirmed.

All concur.