

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| GARY VEAL, | ) | No. ED108179 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | |
| | ) | Honorable Troy A. Cardona |
| STACEY KELAM, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 23, 2020 |

## Introduction

Stacey Kelam ("Appellant') appeals from the trial court's judgment, entered after a jury trial, awarding Gary Veal ("Respondent") $2.5 million for personal injuries sustained in a motor vehicle accident. Appellant brings four points on appeal. In her first point, Appellant argues the trial court erred in denying her motion for new trial because the trial court showed bias toward Respondent and his counsel during *voir dire*, which prejudiced the jury against her. In her second point, Appellant argues the trial court erred in denying her motions for new trial and remittitur because the jury's $2.5 million verdict was excessive. In her third point, Appellant argues the trial court erred in denying her motions for new trial and remittitur because, during closing argument, the trial court prohibited Appellant's counsel from arguing damages could not

be awarded for Respondent's past or future medical treatment. Appellant's fourth point argues the cumulative effects of these errors entitle her to a new trial. We affirm.

**Factual and Procedural Background**

On October 25, 2016, Appellant was in her vehicle attempting to turn left across Jeffco Boulevard heading southbound when she pulled in front of Respondent's vehicle headed northbound on Jeffco Boulevard and caused a collision. Respondent filed a petition ("Petition") seeking damages for Appellant's negligence related to the accident. Respondent alleged Appellant was operating her vehicle at an excessive speed when she failed to yield to the traffic on Jeffco Boulevard. Respondent alleged he sustained injuries to his cervical spine, shoulder, and wrist due to the accident. Respondent also alleged he experienced inconvenience; loss of enjoyment of life; restricted mobility; isolation; anxiety regarding the injury; pain and suffering; numerous doctor appointments, invasive tests, and procedures; and emotional distress due to the accident. Respondent's Petition alleged he "suffered and [will] continue[ ] to suffer damages in excess of $25,000 . . . on account of future medical costs, pain and suffering." On May 21, 2019, Respondent dismissed his claims for future medical costs.

A jury trial was held from June 12-14, 2019. The jury returned a $2.5 million verdict for Respondent, and the trial court entered judgment on the verdict. Appellant moved for a new trial, arguing she was entitled to one because: (1) the trial court precluded her counsel from discussing medical expenses during closing argument; (2) the jury's verdict was excessive and against the weight of the evidence; (3) the trial court's conduct during *voir dire* prejudiced the jury against her; and (4) the cumulative effects of these errors prejudiced her.[1]

---

[1] Appellant's motion for new trial also argued she was entitled to a new trial because Respondent admitted comparative fault during trial but the jury failed to allocate comparative fault. Appellant abandoned this challenge on appeal.

2

This appeal followed. Additional facts will be included below as we address Appellant's points of error.

## Discussion

*Point I: Trial Court's Conduct During* Voir Dire

In her first point on appeal, Appellant urges the trial court erred in denying her motion for new trial because the trial court demonstrated improper bias for Respondent and his trial counsel during *voir dire*, which prejudiced the jury against her. Specifically, Appellant argues the trial court: (1) made statements suggesting the trial court "was working . . . with Respondent in choosing the jury"; (2) "engaged with Respondent's counsel to discuss questions of law with the venirepersons"; and (3) "interacted with Respondent's counsel in a personal and familiar manner in sharp contrast to its interactions with Appellant's counsel." Appellant argues the trial court's conduct and statements deprived her of a fair trial.

Respondent maintains Appellant's first point on appeal is not properly preserved for review. We agree. To preserve a claim of error in a jury-tried case, an appellant must: "(1) timely object to the challenged [error] at trial; (2) restate the basis of objection in a motion for new trial per Rule 29.11(d);[2] and (3) file a brief with this Court that complies with the rules of appellate procedure on the claim of error." *See State v. Davis*, 533 S.W.3d 781, 785-86 (Mo. App. S.D. 2017) (footnote in original). "A reviewing court will not consider objections . . . raised for the first time on appeal and will not convict the trial court of an error it was given no opportunity to correct." *State v. McClanahan*, 202 S.W.3d 64, 70 (Mo. App. S.D. 2006) (citing *Brown v. Jones Store*, 493 S.W.2d 39, 41 (Mo. App. 1973)).

Appellant concedes she did not object to the trial court's statements during *voir dire* she now challenges. However, she complains "there was no trial court ruling or singular statement

---

[2] All rule references are to the Missouri Supreme Court Rules (2017), unless otherwise indicated.

3

to which counsel could practically object"; thus, an objection was unnecessary to preserve her claim of error. Appellant cites no case law, and we can find no case law, supporting her argument. Objections must be timely and specific. *Connour v. Burlington N. R. Co.*, 889 S.W.2d 138, 141 (Mo. App. W.D. 1994) (citing *Appelhans v. Goldman*, 349 S.W.2d 204, 207 (Mo. 1961)). Appellant's failure to make a timely and specific objection renders her first point on appeal unpreserved.

Appellant's claim may be reviewed, if at all, for plain error. *See* Rule 84.13(c). But "[p]lain error review . . . rarely is granted in civil cases." *Mayes v. St. Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 269 (Mo. banc 2014) (citing *St. Louis Cty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 125 n.6 (Mo. banc 2013)). Appellate courts "will review an unpreserved point for plain error only if there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and when the error resulted in manifest injustice or miscarriage of justice." *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 412 (Mo. banc 2019) (quoting *Mayes*, 430 S.W.3d at 269). Reversal for plain error in a civil case further requires the injustice to be "so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 176 (Mo. App. W.D. 2000) (quoting *Atkinson v. Corson*, 289 S.W.3d 269, 276-77 (Mo. App. W.D. 2009)).

There is no basis for reviewing Appellant's claim for plain error. The record reveals the trial court did not show impartiality or bias for Respondent or his counsel during *voir dire*. Appellant complains the trial court made several statements suggesting it "was working . . . with Respondent in choosing the jury." For example, Appellant complains the trial court made statements like "[t]hat's what *our* questions are about" and "*[w]e* just want to make sure that

4

everything *we* get you to talk about . . ." during Respondent's counsel's questioning. (emphasis added). However, the record reveals the trial court made several statements throughout *voir dire* suggesting the trial court and *both* parties were selecting the jury. For example, when addressing the venirepersons at the outset of *voir dire* before either Respondent's or Appellant's counsel began their questioning, the trial court stated, "[P]lease don't be offended if *we* don't choose you as a juror." (emphasis added). And at the conclusion of *voir dire*, the trial court stated, "[W]hen you are here, it shows *us* how important you take this." The trial court also told the venirepersons, "*[W]e* appreciate" the way questions were answered with honesty. (emphasis added).

Appellant also complains the trial court struck a venireperson for cause "on [Respondent's counsel]'s behalf during voir dire." (alteration omitted). However, the record shows the trial court did not strike the venireperson on Respondent's counsel's behalf. Instead, after one venireperson indicated she disagreed with the law allowing plaintiffs to recover damages for pain and suffering, the trial court stated, "We already know that you're going to object to her being on [the jury], and I'm going to take her off to cause." It is well within the trial court's "authority to act on [its] own initiative in excusing a juror" during *voir dire*. *Presley v. State*, 750 S.W.2d 602, 608 (Mo. App. S.D. 1988) (footnote omitted) (citations omitted). The trial court's decision to do so here did not indicate a bias or preference for Respondent or his counsel.

Appellant's complaint that the trial court "interacted with Respondent's counsel in a personal and familiar manner in sharp contrast to its interactions with Appellant's counsel" is similarly meritless. Appellant argues the trial court joked with Respondent's counsel about the pants he was wearing but did not extend Appellant's counsel the same familiarity, prejudicing

5

the jury against her during *voir dire*. But the record shows trial court joked with Appellant's counsel by calling him "Clark Kent" rather than "Kevin Clark." The trial court's interactions with Appellant's counsel were just as friendly and personal as the trial court's interactions with Respondent's counsel.

Appellant urges us these facts and circumstances warrant reversal under plain error review despite the fact she did not object to the trial court's conduct during trial, just as the Springfield Court of Appeals did in *Fleetwood v. Miluakee Mechanics Insurance Co.*, 220 S.W.2d 614 (Mo. App. 1949). *Fleetwood*, however, is factually distinguishable. In *Fleetwood*, the record showed the trial court made comments on the evidence in front of the jury and engaged in the lengthy, argumentative questioning of witnesses that revealed its bias toward the plaintiffs' case. *Id.* at 618-22. Because the trial court's remarks and questions showed "how the trial judge felt about the defense being made," the court found manifest injustice resulted and reversed the trial court's judgment, despite the fact the plaintiffs failed to object to the trial court's conduct during trial. *Id.* at 622. Unlike *Fleetwood*, the trial court made no comments on the evidence or the strength of the parties' respective cases during *voir dire*. Although the trial court's remarks here were unprofessional and unwarranted, we cannot find the trial court's behavior resulted in manifest injustice or miscarriage of justice.

We echo the longstanding sentiment that the trial court should "hold its questions and comments to a minimum" when conducting trials "in the interest of preserving th[e] judicial decorum so necessary to the general public's belief in a fair trial." *See Crimi v. Crimi*, 479 S.W.2d 195, 198 (Mo. App. 1972); *see also Cundiff v. Cline*, 752 S.W.2d 409, 412 (Mo. App. S.D. 1988); *Watson v. Tenet Healthsystem SL, Inc.*, 304 S.W.3d 236, 241 n.3 (Mo. App. E.D. 2009). We do not condone the trial court's improper remarks. However, on the record before

us, there are no substantial grounds for believing the trial court committed error that is evident, obvious and clear, let alone an error that resulted in manifest injustice or miscarriage of justice. Therefore, plain error review is unwarranted.

Point I is denied.

*Point II: Alleged Excessive Verdict*

In her second point on appeal, Appellant argues the trial court erred in denying her motions for new trial and remittitur because the jury's $2.5 million verdict was excessive.

We review a trial court's denial of motions for new trial and remittitur for abuse of discretion. *See Echard v. Barnes-Jewish Hosp.*, 98 S.W.3d 558, 567 (Mo. App. E.D. 2002) (motion for new trial); *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 413 (Mo. App. E.D. 2014) (motion for remittitur). An abuse of discretion occurs "only when the ruling is 'clearly against the logic of the circumstances' and 'so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Stephenson v. Countryside Townhomes, LLC*, 437 S.W.3d 380, 389 (Mo. App. E.D. 2014) (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010)). Where "reasonable persons could differ on the propriety of the court's decision," it cannot be said that the trial court abused its discretion. *Burrows v. Union Pac. R.R. Co.*, 218 S.W.3d 527, 533 (Mo. App. E.D. 2007) (citing *Kehr v. Knapp*, 136 S.W.3d 118, 122-23 (Mo. App. E.D. 2004)).

"Missouri appellate courts no longer engage in close scrutiny of the amounts awarded by juries for personal injuries since the trial court is in a much better position than we are to assess the verdict." *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 303 (Mo. App. S.D. 2011) (quoting *Henderson v. Fields*, 68 S.W.3d 455, 485 (Mo. App. W.D. 2001)). "We should exercise our power to interfere with the judgment of the jury and the trial court with hesitation and only when

7

the verdict is manifestly unjust." *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 521 (Mo. App. E.D. 2007), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013)). No "precise formula" exists for determining whether a verdict is excessive. *Id.* (citing *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 211 (Mo. banc 1991)). Instead, "[e]ach case must be examined on its own facts." *Id.* Our review of the evidence is limited to the evidence that supports the verdict, disregarding all contrary evidence. *Id.* (citing *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 343 (Mo. App. E.D. 2000)).

A verdict may be excessive in two ways. The first is "a verdict that is disproportionate to the evidence of injury and results from an 'honest mistake' by the jury in assessing damages." *Mayes v. UPS, Inc.*, 593 S.W.3d 604, 616-17 (Mo. App. E.D. 2019) (quoting *Stewart v. Partamian*, 465 S.W.3d 51, 56 (Mo. banc 2015)). "Generally, when an excessive verdict is the result of an honest mistake by the jury in weighing the evidence of the nature and extent of injuries and awarding disproportionate damages, it is appropriate that the trial court order remittitur, rather than a new trial." *Evans*, 345 S.W.3d at 302 (citing *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 678 (Mo. App. S.D. 2008)). *See also* § 537.068[3] ("A court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages."). "A new trial is not required because the jury is not guilty of misconduct, only an honest mistake as to the nature and extent of the injuries." *Lindquist v. Scott Radiological Grp., Inc.*, 168 S.W.3d 635, 647 (Mo. App. E.D. 2005) (internal quotations omitted).

The second is "a verdict that is excessive due to trial error that causes bias and prejudice by the jury." *Mayes*, 593 S.W.3d at 617 (quoting *Stewart*, 465 S.W.3d at 56). "Where an

---

[3] All statutory references are to RSMo (2019), unless otherwise indicated.

excessive verdict is the result of trial error or misconduct, the verdict 'is prejudiced and can only be remedied with a new trial.'" *Evans*, 345 S.W.3d at 308 (quoting *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 655 (Mo. App. W.D. 1997)). "Actual trial error must be shown" to establish this form of excessive verdict; "the size of the verdict alone will not establish the requisite bias, passion, and prejudice of the jury sufficient to order a new trial for an excessive verdict." *Id.* (internal quotations omitted). The burden is on the party challenging the verdict as excessive to "demonstrate that actual trial error or some misconduct of the prevailing party was responsible for prejudicing the jury." *Id.* (citing *Woods*, 248 S.W.3d at 679).

Here, Appellant argues the jury's verdict revealed both "honest mistake" excessiveness and "bias and prejudice" excessiveness.

<u>Honest Mistake Excessiveness</u>

Appellant argues the jury's $2.5 million verdict reveals honest mistake excessiveness warranting remittitur because it was unsupported by the evidence. We disagree.

"The jury is given a large amount of deference in determining a party's injuries." *McGathey v. Davis*, 281 S.W.3d 312, 320 (Mo. App. W.D. 2009) (citing *Graham v. Cty. Med. Equip. Co.*, 24 S.W.3d 145, 148 (Mo. App. E.D. 2000)). Our inquiry is limited to "whether the jury's verdict is supported by substantial evidence, or in other words, 'whether the amount of the verdict is responsive to the evidence on the issue of damages.'" *Heins Implement Co. v. Mo. Hwy. & Transp. Comm'n*, 859 S.W.2d 681, 692 (Mo. banc 1993) (quoting *Nichols v. Blake*, 395 S.W.2d 136, 141 (Mo. 1965)).

The evidence, when viewed in the light most favorable to the verdict, established Respondent has been a self-employed automotive repairman for almost twenty-five years. He has no employees. Before the accident, Respondent did not need help making repairs at his shop

and no customers noticed Respondent complain of neck, wrist, or shoulder trouble. After the accident, he had difficulty performing his work. Tasks that used to take Respondent one week to complete take him two weeks or longer. After the accident, Respondent's customers and friends helped him change motors, pull transmissions, perform tire rotations, install water pumps, and install gas tanks. One customer noticed Respondent "seemed to be in constant pain with his arms and neck" after the accident. Respondent had to turn away work after the accident and have friends come to his shop to perform the work instead.

Respondent saw his primary care physician, Dr. Alan Sandidge, at least once a year since 2008 and never complained of neck or shoulder pain before the accident. Although Respondent told Dr. Sandidge he experienced pain in his right wrist before the accident, Respondent never mentioned the pain caused him difficulty working. After the accident, Dr. Sandidge noted more "significant swelling across the joint and limited range of motion" in Respondent's right wrist. Dr. Sandidge believes the accident exacerbated Respondent's wrist pain.

Dr. Dennis Dusek, an orthopedic surgeon, treated Respondent for pain in his right shoulder after the accident and testified Respondent complained he had trouble sleeping at night and had to sleep in a recliner with his right arm hanging over the arm rest to get comfortable. Dr. Dusek's physical examination of Respondent revealed Respondent could only bring his shoulder to 90-degree flexation rather than 110-degree full flexation. Dr. Dusek gave Respondent two cortisone shots, which provided only temporary relief. Dr. Dusek opined Respondent's shoulder injury is permanent and was caused by the accident. In Dr. Dusek's opinion, Respondent will not get better without arthroscopic surgery, which would require Respondent to take time off work. Dr. Dusek noted Respondent "would be hard-pressed to put himself through an operation that would require many months of post-op recovery under the circumstances."

Dr. Richard Howard examined Respondent's right wrist and noticed it was swollen and causing Respondent pain. Dr. Howard observed Respondent's right wrist displayed a limited range of motion. Dr. Howard noted x-rays showed a ligament in Respondent's right wrist was ruptured. Dr. Howard believed any injury to Respondent's right wrist pre-existing the accident was asymptomatic. Dr. Howard believed the accident exacerbated Respondent's wrist condition and caused Respondent's wrist to be symptomatic. He recommended Respondent undergo a partial wrist fusion surgery, which would require Respondent to take time off work. Dr. Howard noted this surgery would not return Respondent's wrist to a "normal" state, but it would allow Respondent to "do a lot more than what he can do now."

Dr. Kevin Rutz, an orthopedic spine surgeon, saw Respondent for his neck and shoulder pain. During Dr. Rutz's physical examination, Respondent had decreased range of motion in his neck and experienced pain when leaning his neck forward and backwards. Dr. Rutz's physical examination revealed Respondent had "impingement signs in his right shoulder, which [are] consistent with having either a rotator cuff tear or tendonitis or bursitis." Respondent also experienced pain when Dr. Rutz manipulated his wrist. X-rays of Respondent's neck showed he had degenerative changes in his neck and spine but those changes were asymptomatic before the accident. Dr. Rutz opined the accident caused Respondent's neck and shoulder to be symptomatic. Dr. Rutz recommended Respondent undergo a C4-7 anterior cervical discectomy and fusion surgery to alleviate Respondent's pain. Respondent never had the surgery.

The jury could fairly reach a verdict of $2.5 million based on this evidence. Appellant's arguments to the contrary are unavailing. Appellant claims the jury's verdict was unsupported by the evidence presented at trial because she adduced evidence she looked both ways when attempting to turn left across Jeffco Boulevard heading southbound, never saw Respondent's

11

vehicle, was traveling at speeds of ten miles per hour or less, and "there was no evidence she was speeding, talking or texting on her telephone, or otherwise distracted" when their vehicles collided. Appellant also claims the jury's verdict was unsupported by the evidence presented at trial because Respondent admitted on cross-examination he could not recall he experienced pre-existing neck, shoulder, or wrist pain despite contrary medical records; he could not recall a CT scan that showed advanced degeneration of his cervical spine likely pre-existing the accident; he chose not to pursue physical therapy recommended by his physician; he refused epidural injections for his neck injury; a physician diagnosed him with severe degenerative disc disease in his neck; and a physician told him his shoulder injury needed no treatment. These arguments ask us to ignore all evidence supporting the jury's verdict and consider only evidence favorable to her, violating our standard of review. *See Coggins*, 37 S.W.3d at 343.

In addition, Appellant criticizes Respondent adduced no evidence he was receiving ongoing medical treatment, intended to seek future medical treatment, or suffered a loss of income because of his alleged pain and suffering. However, Respondent dismissed his claims for future medical costs shortly before trial, and Respondent never plead loss of income in his Petition. Thus, not surprisingly he presented no evidence regarding medical treatment or loss of income, as "trial is limited to the scope of the issues raised by the pleadings." *Schieffer v. DeCleene*, 539 S.W.3d 798, 807 (Mo. App. E.D. 2017) (quoting *Int'l Div., Inc. v. DeWitt & Assoc., Inc.*, 425 S.W.3d 225, 228 (Mo. App. S.D. 2014)).

Appellant has failed to show the jury's $2.5 million verdict is disproportionate to the evidence of injury and resulted from an honest mistake. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for remittitur.

12

<u>Bias and Prejudice Excessiveness</u>

Appellant also argues the jury's $2.5 million verdict reveals bias and prejudice excessiveness. According to Appellant, the jury was biased and prejudiced by the trial court's statements during *voir dire*, which she claim indicated its bias for Respondent and his counsel. Appellant also argues the jury was biased and prejudiced by Respondent's counsel's closing argument to the jury, which suggested Appellant wished to portray Respondent as "a liar, a cheat, and a fraud" through an expensive expert witness—"the 10-million-dollar man." Appellant claims this argument was "inflammatory," lacked evidentiary support, and prejudiced the jury against her.[4] We disagree.

To the extent Appellant argues the trial court's statements during *voir dire* resulted in bias and prejudice excessiveness, her claim fails for the reasons discussed in Point I. To the extent Appellant argues Respondent's counsel's closing argument caused bias and prejudice excessiveness, her claim also fails. Appellant bore the burden to demonstrate Respondent's counsel's closing argument amounted to actual trial error or misconduct "responsible for prejudicing the jury." *Evans*, 345 S.W.3d at 308 (citing *Woods* 248 S.W.3d at 679). She has not done so.

Appellant failed to object to Respondent's counsel's closing argument at trial. "It is the general rule that the effect of improper argument is considered on appeal to have been waived if proper and timely objection is not made to the trial court so that it may . . . take appropriate

---

[4] In the alternative, Appellant suggests Respondent's counsel's closing argument "supports [her] contention that, at a minimum, the verdict was the result of an honest mistake by the jury which resulted in a verdict which far exceeds fair and reasonable compensation for Respondent thereby entitling Appellant to a remittitur of the award." But a finding of honest mistake excessiveness requires the verdict to be unresponsive to the evidence on the issue of damages. *See Heins Implement Co. v. Mo. Hwy. & Transp. Comm'n*, 859 S.W.2d 681, 692 (Mo. banc 1993) (quoting *Nichols v. Blake*, 395 S.W.2d 136, 141 (Mo. 1965)). As discussed *infra* in this opinion, Respondent's counsel's argument was supported by the evidence presented at trial and the reasonable inferences therefrom. Therefore, we do not find the jury was honestly mistaken in reaching its verdict because of Respondent's counsel's statements during closing argument.

action under the circumstances to remove the prejudicial effect." *O'Brien v. City of St. Louis*, 355 S.W.2d 904, 907 (Mo. 1962) (citations omitted); *see also Arrington v. Goodrich Quality Theaters, Inc.*, 266 S.W.3d 856, 861 (Mo. App. S.D. 2008). Therefore, Respondent's closing argument to the jury could not have amounted to trial error.

Appellant has also failed to prove Respondent's counsel's argument amounted to "misconduct" that prejudiced the jury. "Counsel is given wide latitude to suggest inferences from the evidence in closing argument, even if the inferences drawn are illogical or erroneous." *Marmaduke v. CBL & Assocs. Mgmt., Inc.*, 521 S.W.3d 257, 274 (Mo. App. E.D. 2017) (citing *Nelson v. Waxman*, 9 S.W.3d 601, 606 (Mo. banc 2000)); *Minze v. Mo. Dep't of Public Safety*, 541 S.W.3d 575, 581 (Mo. App. W.D. 2017) (quoting *Hemann v. Camolaur, Inc.*, 127 S.W.3d 706, 710 (Mo. App. W.D. 2004) ("Counsel on both sides of the bar are permitted wide latitude and discretion in referring to evidence and arguing inferences during closing argument.").

Respondent's counsel's closing argument discussed the evidence presented at trial and the reasonable inferences therefrom. Appellant's defense, shown through her cross-examination of Respondent and presentation of expert testimony, questioned the credibility of Respondent's injuries. During cross-examination of Respondent, Appellant elicited testimony that Respondent's neck, wrist, and shoulder pain preexisted the accident and Respondent chose not to participate in recommended physical therapy. Appellant also presented testimony from her paid independent medical expert, Dr. Peter Mirkin, that Appellant's wrist, neck, and shoulder pain preexisted the accident. Dr. Mirkin testified he makes approximately $500,000 in medical legal fees per year and participated in 197 depositions over twenty years. Respondent's counsel's closing argument criticizing Appellant for suggesting Respondent is "a liar, a cheat, and a fraud"

14

through the use of Dr. Mirkin, her "10-million-dollar man," responded to the evidence produced at trial and the inferences a jury could rightly make from that evidence.

Appellant argues this Court recently held Respondent's counsel's "inflammatory" closing argument "tactics" were prejudicial in *Collier v. Steinbach*, 597 S.W.3d 317 (Mo. App. E.D. 2019). In Appellant's view, the *Collier* decision compels us to find Respondent's counsel's closing argument biased and prejudiced the jury's verdict in this case. However, Appellant misunderstands *Collier*'s holding. In *Collier*, we held the trial court abused its discretion in allowing the plaintiff to make prejudicial references to the defendant's liability insurer during opening statement, her case in chief, and closing argument. *Id.* at 320. We held the trial court committed reversible error because the trial court's rulings allowed the plaintiff to "flaunt" the defendant's insurance coverage to the jury, which is prohibited by Missouri case law. *Id.* at 320-21 (citing *Pope v. Pope*, 179 S.W.3d 442, 463 (Mo. App. W.D. 2005)). Appellant's case does not involve comments on liability insurance. Thus, *Collier* is inapplicable to Appellant's case.

Appellant has failed to show the jury's $2.5 million verdict was prejudiced because of trial error or misconduct. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for new trial.

Point II is denied.

*Point III: Statements Regarding Past and Future Medical Treatment in Closing Argument*

In her third point on appeal, Appellant argues the trial court erred in denying her motions for new trial and remittitur because the trial court prohibited Appellant's counsel from arguing damages could not be awarded for Respondent's past or future medical treatment. She argues this prohibition was "presumptive[ly]" prejudicial. She further argues the presumption of

15

prejudice "cannot be rebutted because the jury was instructed to award any damages Respondent sustained or was reasonably certain to sustain in the future."

Appellant's argument is without merit. On damages, the trial court instructed the jury:

> If you assess a percentage of fault to [Appellant], then, . . . you must determine the total amount of [Respondent]'s damages to be such sum as will fairly and justly compensate [Respondent] for any damages you believe [Respondent] sustained and is reasonably certain to sustain in the future that the motor vehicle collision of October 25, 2016 directly caused or directly contributed to cause.

During instruction conference in chambers, Appellant's counsel stated he had no objection to this jury instruction. However, Appellant's counsel urged the trial court he should be allowed to argue damages could not be awarded for Respondent's past or future medical treatment because he believed Respondent's counsel told the jury during opening statement Respondent sought no damages for medical bills. Respondent's counsel disputed whether he told the jury this during opening statement and objected to Appellant's counsel being permitted to make such an argument because he believed medical bills were a "nonissue," as Respondent's claim for medical costs was dismissed before trial. The trial court then told Appellant's counsel, "I will overrule their objection if you are able to show me . . . that [Respondent's counsel] said in opening statement we won't be seeking medical bills."

There is no record Appellant's counsel ever followed up about whether Respondent's counsel stated Respondent sought no medical bills during opening statement. The record reveals the trial court made no ruling prohibiting Appellant's counsel from arguing damages could not be awarded for Respondent's past or future medical treatment. To the contrary, the trial court ruled it would allow Appellant's counsel to make this argument if he established Respondent's counsel told the jury during opening statement Respondent sought no medical bills. The record indicates Appellant's counsel made no effort during closing argument to assert damages should

16

not be awarded for past or future medical expenses. We will not fault the trial court for Appellant's counsel's failure to follow up and assert this argument during closing argument. *See State v. Skillicorn*, 944 S.W.2d 877, 888 n.4 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008) (holding that, to preserve an objection made in chambers for appellate review, a party must renew the objection in court and make a record specifically identifying the action to which the party is objecting and the proper legal grounds supporting the objection). We also note Appellant made no objection to the trial court's jury instruction on damages she now claims is prejudicial. "No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." *See* Rule 70.03; *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 746 (Mo. banc 2016).

We cannot find the trial court committed error entitling Appellant to a new trial or remittitur.

Point III is denied.

*Point IV: Cumulative Effect of the Alleged Errors*

In her final point, Appellant contends the trial court abused its discretion by not granting her a new trial because the cumulative effects of the previously alleged errors prejudiced her. We disagree. "Numerous non-errors cannot add up to error. Having determined that none of [Appellant]'s previous points amount to reversible error, there can be no reversible error attributable to their cumulative effect." *State v. Buchli*, 152 S.W.3d 289, 310 (Mo. App. W.D. 2004) (internal quotations omitted).

17

## Conclusion

The trial court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.